This is a civil action in ejectment, brought by the plaintiffs against the defendants to recover lands described in the complaint, as follows: "Farms Nos. 1, 2 and 7 on plat of land formerly belonging to R. J. C. Ward, plat of which is on record in Columbus County, register of deeds office in Book D-3, page 600. . . . All three tracts containing 76.68 acres, more or less."
The answer denied plaintiffs' title, set up ownership in fee simple to part of the land, and pleaded the 7-, 21- and 30-year statute of limitations in bar of any recovery. Only lot 1 was in dispute at the trial.
The issues submitted to the jury and their answer thereto, was as follows: "Are the plaintiffs owners and entitled to the possession of the land in controversy, designated on the court map by the letters and figures A, B, C, D, E, 4 and A? Answer: Yes."
This was shown on the court map as Lot 1. The court below signed judgment in accordance with the verdict. Defendants made numerous *Page 490 
exceptions and assignments of error and to the judgment as signed, and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
The defendants made motions for judgment as of nonsuit at the close of plaintiffs' evidence and at the close of all the evidence. C. S., 567. The court below overruled these motions and in this we can see no error.
The defendants claim that the burden was on plaintiff to show adverse possession and there was no sufficient evidence to be submitted to the jury on this aspect, therefore plaintiffs ought to have been nonsuited. We cannot so hold.
It is well settled in this jurisdiction that in an action of ejectment, plaintiff must recover, if at all, on the strength of his own title, and not on the weakness of his adversary. Plaintiff in ejectment must show title good against the world or good against defendant by estoppel, weakness or defendant's title making no difference.
The evidence on the part of plaintiffs was to the effect that "A" to "B" which was a road, was the well defined boundary of Lot 1, in dispute, and defendant Garfield Grainger, and those through whom he claimed, so recognized this as the dividing line by agreement, acquiescence and conduct. That their deed called for 76.68 acres and it was a body of farm and timber land, and the line in controversy in the deed called for from "A" to "B," was the true dividing line. That defendants did not know where the Carteret line was when Grainger purchased the land, that defendants' deed covered about 30 acres, that "A" to "B" was the dividing line and if the Carteret line as contended by defendants was from "E" to "4" the defendants would have some 60 acres instead of 30 acres of land — his deed called for about 30 acres.
On the other hand the evidence on the part of defendants was to the effect that the line from "E" to "4" was the Carteret line and the true line called for in his deed. The plaintiffs' evidence was to the effect that at numerous times and periods much timber had been cut on the 30-acre tract (No. 1) and some near defendants' home, without objection at any time and within 4 feet of the road "A" to "B." On the other hand, defendants' evidence was to the effect that north of the line from "A" to "B" from "E" to "4" was the true dividing line — the Carteret line; Garfield Grainger, defendant, testified, in part, that "In the fall of 1931, after I got moved there, I put three buildings on the *Page 491 
disputed land; two automobile sheds, a shelter and a barn for peas and plunder. I built it especially to put peas in. I have had hog pens and hog lots on this disputed land since I have been there. I have continued to use the disputed land. I have cut wood on it and cross ties, and did not hear no dispute until Mr. Shelly bought it. I have cleared about three-quarters of an acre, or something like that, north of the cart path in front of the house and had it in cultivation."
The evidence of both plaintiffs and defendants in regard to the true dividing line, were questions of fact for the jury to determine.
The court below charged fully as to the burden of proof being on plaintiffs to establish title by the greater weight of the evidence. The court also charged fully the law as to the several ways of establishing title in this State. The court charged: "I used the phrase `adverse possession,' and it is necessary for you to understand what that means. The best definition I have seen is given by our Supreme Court in the case ofLocklear v. Savage, in 159 N.C. 236 (at pp. 237-8) in which the Court uses this language: Adverse possession `consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner. . . . The possession must of course be not only adverse, as we have defined it, but open, notorious and continuous, and the extent of it must be shown by known and visible boundaries."
In Locklear v. Savage, supra, it is further said, at p. 239: "It is true that in proving continuous adverse possession under color of title nothing must be left to mere conjecture. The testimony must tend to prove the continuity of possession for the statutory period, either in plain terms or by `necessary implication.'"
The court below further charged: "So, where a person offers a deed or paper-writing purporting to convey title setting out metes and bounds and enters into the actual occupancy of a portion thereof, and holds it continuously for seven years, the law extends the possession to the outermost bounds set out in his deed; where there are known and visible lines and boundaries. There is this rule of law; that where contesting claimants have deeds both of which cover the same land, and where each claimant is in the adverse possession of a portion of the land, then that *Page 492 
invokes the rule of law with respect to lappage, which has been very succinctly expressed by our Court in the case of Penny v. Battle, in191 N.C. 220 (at p. 224, quoting from McLean v. Smith, 106 N.C. at p. 176), in which this language is used, and which I charge the jury is law with respect to that feature: `It is settled that where the title deeds of two rival claimants to lands lap upon each other, and neither is in the actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in him who has the better title. If one be seated on the lappage and the other not, the possession of the whole interference is in the former. . . . But if both have actual possession of the lappage, the possession of the true owner, by virtue of his older title, extends to all not actually occupied by the other.'"
The court then applied the principle to the evidence adduced by plaintiffs, defendants excepted and assigned error. We do not think this exception and assignment of error can be sustained. When the court came to consider the evidence adduced by defendants, it applied the same principle of law as to defendants' evidence: "The defendants contend you ought to find from the testimony of Long and others that the land line E-4 is the Carteret line referred to in the pleadings, and that he has shown possession of a portion of the land, that should carry his possession tothe outermost bounds of his deed, and that he is entitled to extend thatpossession to that line; that he has been cutting timber and gathering wood and straw and exercising possession upon the lands in dispute, building a garage, barn and hog pen, and that he has raised tobacco and potatoes, and that even if the plaintiffs' deed covers it, that his deed covers it also,and there is a lappage, and that he is seated on the lappage, and that youshould answer this issue No, the plaintiffs are not entitled to it, and that you should not find from the greater weight of the evidence that the plaintiffs have made out their title by the greater weight of the evidence." Defendants' contention cannot be sustained.
Conceding, but not deciding, that the charge was error in regard to constructive possession, although the plaintiffs' evidence was to the effect that it was purchased as a whole, 76.68 acres, and a deed made to it as a whole. Basnight v. Meekins, 121 N.C. 23; Mintz v. Russ, 161 N.C. 538;Lumber Co. v. Cedar Works, 168 N.C. 344. Under the evidence and the facts and circumstances of this case, it was not prejudicial or reversible error as the plaintiffs' evidence was to the effect that "A" to "B," the road, was the established line between plaintiffs and defendants. The evidence of defendants was to the contrary. In the charge both were "fed out of the same spoon." Then, outside of this charge, *Page 493 
on constructive possession, there was sufficient competent evidence on the part of plaintiffs that "A" to "B" was long recognized as the true dividing line between plaintiffs and those through whom they claimed and defendants. In fact, this evidence on the part of plaintiffs was sufficient to indicate an estoppel to claim north of the road from "A" to "B." On plaintiffs' evidence the use of a small portion of an acre by defendants was negligible.
The defendants' exception and assignment of error to the following portion of the charge of the court below, cannot be sustained: "The plaintiff also offers in evidence deed of Todd and wife to Jesse Hinson, dated 16 November, from whom Joshua Norris acquired the Grainger land, which calls for a boundary from the Bull Hole back to the point designated by the letter "A." Upon this testimony the plaintiffs contend that their allegations have been made good and that they have shown the true location of the line to be from `A' to `B'; that there had been agreement forty years or more ago, in which the agreed line was established from "A" to "B," and that both sides occupied and possessed the land up to that line, and if Mr. Grainger and those under whom he claims have crossed that line, it was merely as an occasional trespasser, and that there were no acts of possession, nor any attempt to possess until Mr. Grainger cultivated a fraction of an acre beyond the line "A" to "B," and that was beyond the bounds of the Grainger deed, and his possession there was not open sufficiently to ripen."
If the introduction of the Todd deed was error, we think it harmless on this record. There was much evidence on the part of plaintiff that the agreed line between the lands in controversy was the road between "A" and "B."
From a careful reading of the record, it seems that the able and learned judge in the court below tried this case with care, plumbing the law as laid down by this Court applicable to the facts. We have examined the well prepared briefs of both sides of this controversy. The question to be decided was mainly one of fact for the jury to determine. It has been long settled in this jurisdiction that the presumption as to error is against appellant and that error must be affirmatively established. The burden of showing error and that it is material is on appellant. In re Ross, 182 N.C. at p. 478. We see in law, on the record, no prejudicial or reversible error.
No error. *Page 494