J. E. LINDSAY v. FRANK CARSWELL, GILBERT CARSWELL, WILL RECTOR, ROY BUTLER AND JOHN BEAM.

(Filed 7 April, 1954.)

**1. Trespass to Try Title § 3—**

Where defendants fail to show that the grantee in the original deed in their chain of title ever conveyed the land to them or to any of the defendants' predecessors in title, or that they acquired the land by inheritance from such grantee, there is a *hiatus,* and the evidence is insufficient to support a finding to the effect that defendants had established title by *mesne* conveyances from the original grantee.

**2. Adverse Possession § 3—**

Adverse possession under known and visible lines and boundaries must be not only continuous, but also adverse or hostile.

**3. Adverse Possession § 19—Evidence held insufficient to show adverse possession under color.**

This action involved title to lappage in the respective deeds of the parties. Evidence to the effect that defendants' predecessors in title cut

timber from time to time from their land, without evidence that the timber was cut from the lappage in dispute, and that their predecessors in title sold timber from their land, including the lappage, on two separate occasions, without evidence that any of defendants' predecessors in title lived on that part of the land within the lappage, and without sufficient evidence showing that the original deed in their chain of title antedated that of the adverse party, *is held* insufficient to ripen title in defendants to the lappage by adverse possession under color.

**4. Adverse Possession § 1—**

Adverse possession means actual possession, with an intent to hold solely for the possessor to the exclusion of others and is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible, such acts to be so repeated as to show that they are done in the character of owner, and not merely as an occasional trespasser.

**5. Adverse Possession § 8—**

Where there is a lappage in the deeds of the respective parties, and neither is in actual possession of the lappage, the party having the better paper title has presumptive possession of the lappage.

APPEAL by plaintiff from *Nettles, J.,* September-October Term, 1953, of BURKE.

This is an action for trespass instituted to recover damages against the defendants for the cutting and removal of timber.

It is alleged in the complaint that Roy Butler attempted to sell timber growing on plaintiff's premises to the defendant John Beam, and that the defendants Frank Carswell, Gilbert Carswell and Will Rector are his agents, servants, and employees. These defendants in their answer allege that they made a *bona fide* purchase of the timber in question from their codefendant, Roy Butler, and pray that the restraining order issued against them be dissolved.

The defendant Roy Butler filed a separate answer in which his wife purports to join although she is not a party to the action. In this answer they allege that they are the owners of 86 acres of land, and describe it by metes and bounds, which description is identical with that contained in the conveyance to Florence Ethel Butler from Minda Butler and others, referred to hereinafter, and further allege that they and those under whom they claim have been in adverse possession thereof for more than seven, twenty, and thirty years.

This controversy involves what appears to be a lappage of some six acres or more contained in the description in plaintiff's deed and in the deed to Florence-Ethel Butler, wife of the defendant Roy Butler.

The plaintiff offered in evidence an unbroken recorded chain of title to his tract of land containing 98 acres, more or less, beginning with a

grant from the State of North Carolina, entered on 31 January, 1880, and recorded on 5 December, 1885, in Book 1, page 214, in the office of the Register of Deeds of Burke County.

The plaintiff's evidence is to the effect that he bought this tract of land in 1938; that it is timber land and that is what he bought it for. That, "it is just mountain land . . ." That when he bought it in 1938 he cultivated an orchard thereon for five or six years, spraying it and gathering fruit from it. A part of this orchard, according to evidence offered in behalf of the plaintiff and the defendants, was within the disputed area.

The defendants offered in evidence a deed executed in 1866 by R. R. Carswell to Angeline Carswell and filed for registration in the office of the Register of Deeds for Burke County, in Book G, page 219, on 8 February, 1879. This deed, after describing the land conveyed by metes and bounds, contains this statement: ". . . containing 31 acres, more or less, granted to Angeline Carswell and her heirs, by Robert R. Carswell, a part of the land on which he now resides."

The defendants also offered in evidence a deed dated 6 October, 1900, from Joseph England and wife, Emily, to Alexander Butler, which instrument was filed for registration on 1 July, 1918, and duly recorded in Book G-4, page 243. The only description given in connection with this instrument is as follows: ". . . 'adjoining the land,' old homeplace of Robert Carswell." They also offered a deed dated 21 February, 1901, executed by G. N. Carswell and wife, Eliza, to Alexander Butler, filed for registration on 1 July, 1918, and registered in Book G-4, page 244, being his one-sixth interest in the homeplace of Robert Carswell.

An unrecorded deed dated 12 December, 1892, purporting to be a quitclaim deed from J. T. Carswell to Alexander Butler, for all the right, title, and interest of J. T. Carswell in 32 acres of land was offered by the defendants. This deed was held to be competent only as against the grantor.

The next deed offered in defendants' chain of title was one executed on 4 March, 1936, by J. K. Butler and others to Julius and P. A. Butler (containing the same description set out in the answer of Roy Butler and his wife, Florence Ethel Butler), which deed was duly recorded on 10 March, 1936, and in addition to the description, contains the following: "This being a tract of land conveyed by R. R. Carswell to Angeline Carswell, deed dated 1866, Book G, page 219." The final deed offered by the defendants was executed by Minda Butler, widow, Neely B. Cody and others, to Florence Ethel Butler, and contains the identical description set forth in the deed from J. K. Butler and others to Julius and P. A. Butler. This deed was recorded in Book 57, page 10, on 1 May, 1943, in the office of the Register of Deeds for Burke County.

The defendants' evidence as to title and adverse possession, in sum and substance, is as follows:

1. Roy Butler, 45 years of age, testified that Alexander Butler was his uncle and the father of Julius and Pink Butler; that he did not remember Pink Butler having ever lived on the premises in question. ". . . his father moved off when he was small . . . I do not remember his living there." As to adverse possession, this witness further testified, "Since 1943, I got wood anywhere on this property that I wanted to, and I lived on it. . . . before I lived there a fellow named Childers lived in an old shack, and I lived in it too a couple of years before I built. . . . I helped Pink Butler cut timber on this tract (including the disputed area) . . . either in 1936 or 1937. . . . My wife and I sold some timber to Frank Carswell, and that timber was approximately the same as where it was cut over in 1936 . . ."

2. Joshua Carswell, a 78-year-old grandson of Robert R. Carswell, testified that Alexander Butler married Lucetta Carswell, the daughter of Robert R. Carswell; that Alexander Butler cut pine timber for shingle blocks off of this tract of land for some ten or fifteen years, "just a few at a time." That Alexander Butler lived on the land but left it fifty years ago; that there has never been an orchard on any part of the disputed area. That he heard Alexander Butler tell his father that he was going to buy the land in dispute from the heirs of Robert R. Carswell; that Robert R. Carswell was dead at the time; that when he was living he lived on the right of the road on Highway No. 18, of this Butler property.

3. Schuyler Huffman testified that he was familiar with the lands in dispute; that he was 60 years old and lived within 400 yards of the Roy Butler property; that Pink Butler had timber cut off the land in the disputed area in 1936; that S. S. Carswell and J. R. Carswell had an orchard and made a business of selling fruit; that "a piece of orchard half as big as the Court Square" was within the disputed area.

The essential parts of the court's findings of fact are set out below:

(a) The plaintiff claims title to the lands in the disputed area as set forth on the map prepared by James A. Harbison, County Surveyor, and shown within the blue lines thereon, under the grant from the State as set out hereinabove; that the title and *mesne* conveyances therein embrace the same boundaries and lands as specifically described in the plaintiff's complaint.

(b) That the defendants claim title to the lands conveyed by Robert R. Carswell by deed dated 1866, to Angeline Carswell, and by *mesne* conveyances to the *feme* defendant, Mrs. Florence Ethel Butler.

(c) That the defendants' title and each *mesne* conveyance therein embraces the same boundaries and lands specifically described in a separate answer of the defendants, Florence Ethel Butler and Roy Butler, and

shown on the map prepared by the above surveyor, within the red lines thereon. Exception No. 14.

(d) That the land described in the separate answer of Florence Ethel Butler and Roy Butler has been in the continuous and active possession and occupancy of the defendants and their predecessors in title since 1866, under known and visible lines and boundaries, as set forth in the said separate answer of the defendants and as designated within the red lines on said map. Exception No. 15.

(e) That the property in dispute is covered by both deeds for the plaintiff and for the defendants; (that the deeds of the defendants predated those of the plaintiff and that the land has been in the possession of the defendants and their predecessors since 1866). Exception No. 18 is to that portion of the above finding of fact within the parentheses.

Judgment was accordingly entered adjudging the defendants, Florence Ethel Butler and Roy Butler, to be the sole owners of the land described in their answer; directing that the injunction theretofore issued be dismissed and that the defendants have and recover the timber cut from the premises or the money obtained therefor. The plaintiff appeals, assigning error.

*Mull, Patton & Craven for plaintiff, appellant.*
*O. Lee Horton and Russell Berry for defendants, appellees.*

DENNY, J. The plaintiff has preserved twelve of his nineteen exceptions and assignments of error based thereon. However, in disposing of this appeal we deem it necessary to consider only exceptions Nos. 14, 15, and 18.

Exception No. 14 is to the finding of fact set out in paragraph (c) hereinabove to the effect that the defendants' title and each *mesne* conveyance therein embraces the same boundaries and lands specifically described in the answer of Florence Ethel Butler and Roy Butler. The fallacy in this finding of fact is that the deeds offered by the defendants in an effort to show adverse possession by themselves and those under whom they claim since 1866, do not make out an unbroken chain of title to the 86 acres of land described in the deed to Florence Ethel Butler. There is not a scintilla of evidence in the record tending to show that Angeline Carswell conveyed the 31 acres of land she acquired from R. R. Carswell in 1866 to any of the predecessors in title of Florence Ethel Butler, or that any of them inherited the property from her. On the contrary, the defendants offered testimony to the effect that Alexander Butler purchased his land from the heirs of R. R. Carswell. Then who were those heirs? He obtained one deed from Joseph England and wife, Emily. Was Emily a daughter of R. R. Carswell? Apparently not, because the deed executed

by these parties refer to the lands described therein as "adjoining the land, old homeplace of Robert Carswell." The other recorded deed executed by G. N. Carswell and wife, Eliza, to Alexander Butler, offered by the defendants as a source of their title, recites that it is for a "one-sixth interest in the homeplace of Robert Carswell." While the unrecorded deed from J. T. Carswell (a son of Robert R. Carswell, according to the record) to Alexander Butler simply purports to quitclaim all the right, title, and interest of J. T. Carswell in 32 acres of land, no evidence was offered to identify this tract of land as being a part of the lands of Robert R. Carswell or Angeline Carswell.

Furthermore, were J. K. Butler and others, who executed a conveyance to Julius and P. A. Butler (which deed was offered as a link in the defendants' chain of title) the other heirs of Alexander Butler? The evidence discloses that Julius and Pink Butler were sons of Alexander Butler, but there is no evidence from which we can ascertain from what source J. K. Butler and others obtained their interest, if any, in the land conveyed. Was P. A. Butler and Pink Butler one and the same person? If so, how and when did he acquire the one-half interest in the land conveyed to Julius Butler? The record is silent as to this information. Moreover, the record is also silent as to whose widow Minda Butler is, and how Neely Butler Cody and others acquired an interest, if any, in the land which they conveyed to Florence Ethel Butler.

It is true that the deed from J. K. Butler and others to Julius and P. A. Butler, and the deed from Minda Butler, widow, and others, to Florence Ethel Butler, each contains the following statement: "This being a tract of land conveyed by R. R. Carswell to Angeline Carswell, deed dated 1866, Book G, page 219." Each of these deeds, however, describes the tract of land conveyed as containing 86 acres, more or less, while the deed from R. R. Carswell to Angeline Carswell dated in 1866 and recorded in 1879, describes certain land by metes and bounds, and then states, "containing 31 acres, more or less." A comparison of the description in the deed from J. K. Butler and others to Julius and P. A. Butler, and from Minda Butler, widow, and others, to Florence Ethel Butler, with the description contained in the deed from R. R. Carswell to Angeline Carswell, leads to the conclusion that the 31-acre tract described in the deed to Angeline Carswell is included within the description contained in the above deeds. However, the evidence disclosed on the record does not support the finding complained of herein to the effect that the defendants' title and each *mesne* conveyance therein embraces the same boundaries and lands specifically described in the separate answer of Florence Ethel Butler and Roy Butler. Or to put it another way, the evidence is not sufficient to support the finding that the defendant Florence Ethel Butler has an unbroken chain of title to the 83 acres of land claimed by her back to 1866.

We will discuss exceptions Nos. 15 and 18 together. While the court found that the defendants (Florence Ethel Butler and Roy Butler) and their predecessors in title have been in the continuous and active possession and occupancy of the premises described in their answer since 1866, under known and visible lines and boundaries, the possession is not found to have been either adverse or hostile. Moreover, we do not think the evidence as to adverse possession, with respect to the disputed area, is sufficient to have ripened title in Florence Ethel Butler under color thereto or in any of her predecessors in title. What does the evidence disclose in this respect? (1) Whatever lands Alexander Butler purchased under the deeds dated in 1900 and 1901, which deeds were offered in evidence by the defendants to make out Florence Ethel Butler's chain of title, he did not live on such premises more than two or three years, for he moved therefrom fifty years ago, according to the defendants' evidence adduced in the trial below. (2) There is no evidence that any person claiming title to the premises under consideration, under color, ever resided thereon after Alexander Butler moved therefrom until Roy Butler lived on it. (3) The only acts offered to show adverse possession were these: (a) Alexander Butler, for ten or fifteen years, cut pine timber off of this land for shingle blocks, "just a few at a time." But there is no evidence that he cut any shingle blocks in the disputed area. (b) Pink Butler, who never lived on the premises while he held the paper title thereto, sold the timber thereon including the disputed area, in 1936. (c) Roy Butler and his wife sold the timber on the premises including the disputed area, in 1953. He testified that he lived on the premises, but not in the disputed area, for two years (but when is not stated), and that "since 1943 I cut wood anywhere on the property that I wanted to . . ." How much wood he cut, or how often he cut it, or from what part of the premises he obtained it is not made to appear.

Adverse possession means actual possession, with an intent to hold solely for the possessor to the exclusion of others and is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible, such acts to be so repeated as to show that they are done in the character of owner, and not merely as an occasional trespasser. *Price v. Whisnant,* 236 N.C. 381, 72 S.E. 2d 851; *Perry v. Alford,* 225 N.C. 146, 33 S.E. 2d 665; *Berry v. Coppersmith,* 212 N.C. 50, 193 S.E. 3; *Alexander v. Cedar Works,* 177 N.C. 137, 98 S.E. 312; *Land Co. v. Floyd,* 167 N.C. 686, 83 S.E. 687; *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347; *Monk v. Wilmington,* 137 N.C. 322, 49 S.E. 345; *Williams v. Wallace,* 78 N.C. 354; *Bartlett v. Simmons,* 49 N.C. 295; *Loftin v. Cobb,* 46 N.C. 406, 62 Am. Dec. 173.

The law with respect to title of a disputed area covered by a lappage in deeds, was stated by *Stacy, C. J.,* in *Vance v. Guy,* 224 N.C. 607, 31 S.E.

2d 766, in the following language: "Where the title deeds of two rival claimants to land lap upon each other, and neither is in the actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in the one who has the better title," citing *Penny v. Battle,* 191 N.C. 220, 131 S.E. 627. See also *Bostic v. Blanton,* 232 N.C. 441, 61 S.E. 2d 443; *Whiteheart v. Grubbs,* 232 N.C. 236, 60 S.E. 2d 101; *Ownbey v. Parkway Properties,* 222 N.C. 54, 21 S.E. 2d 900.

The plaintiff is entitled to a new trial and it is so ordered. In the meantime, Florence Ethel Butler, who is a necessary party to this action, should be formally made a party defendant.

New trial.