BESSIE PRICE (WIDOW) v. TOMRICH CORPORATION AND WILLIAMS E. ARANT, JR., TRUSTEE FOR FIRST UNION BANK

No. 6814SC465

(Filed 15 January 1969)

**1. Adverse Possession § 17— color of title — commissioner's deed**

Commissioner's deed executed in 1952 in a judicial sale to plaintiff's predecessor in title, with description embracing the tract in controversy, *is held* to constitute color of title, and it is not necessary to rely upon the 1963 proviso to G.S. 1-38 providing that commissioners' deeds in judicial sales constitute color of title.

**2. Adverse Possession § 17— color of title — where deed passes title to part of land**

The fact that an instrument passes title to a part of the land in its description does not prevent it from being color of title to that part to which it does not convey good title but which is embraced within its description.

**3. Adverse Possession § 25— color of title — sufficiency of evidence**

Where the descriptions in plaintiff's and defendant's respective deeds embrace in part the same land, plaintiff's evidence is sufficient to establish *prima facie* case of seven years' adverse possession under color of title as to the controverted land, where evidence tends to show that (1) the land has been held by plaintiff and her predecessor in title since 1952 under known and visible boundaries conforming to the descriptions in plaintiff's deed and that (2) the land in question was hilly with small streams on it, that plaintiff's predecessor in title grew timber and built fish ponds on the property, and that plaintiff in recent years had received approximately $300 annually in fishing fees from fishermen using the ponds.

**4. Adverse Possession § 4— lappage in descriptions of deeds**

Where the descriptions in plaintiff's and defendant's respective deeds embrace in part the same land, and plaintiff is in possession of the lappage and defendant is not, title to the entire lappage is perfected in plaintiff if he establishes adverse possession of the lappage, or a part thereof, for seven years under color of title.

**5. Adverse Possession § 1— defined**

Adverse possession means actual possession with an intent to hold solely for the possessor to the exclusion of others and is denoted by the exercise of repeated acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible.

**6. Adverse Possession § 25— sufficiency of evidence — acts of trespass v. acts of continuous use**

Proof of intermittent acts of trespass is not sufficient to overrule a motion to nonsuit upon the issue of adverse possession, but evidence of continuous possession by using the land for the purposes for which it was ordinarily susceptible, even though such acts were seasonal or intermittent, is sufficient.

**7. Trial § 21— nonsuit — consideration of evidence**

On a motion to nonsuit, plaintiff's evidence is to be taken as true and must be considered in the light most favorable to her, giving her the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence.

APPEAL by plaintiff from *Godwin, S.J.,* at the 22 July 1968 Session of DURHAM Superior Court.

Plaintiff filed her complaint and request for restraining order on 25 May 1968, alleging that she was the owner of a tract of land containing 77.75 acres, more or less, in the area of Durham known as Bragtown; that during the month of May 1968, agents of the defendant corporation entered upon a portion of plaintiff's land, leveled it, uprooted trees, removed topsoil, and committed other acts of trespass; that they threatened and planned to cut a hole in the dam of a pond belonging to plaintiff, which would cause it to be drained. She alleged that such harm would be immeasurable and irreparable and prayed for temporary and permanent restraining orders and damages in the amount of $5500.00.

The defendant corporation answered 26 June 1968, denying any trespass on lands of plaintiff and alleging that the acts complained of were committed on land belonging to it.

On 23 July 1968, plaintiff, by leave of court, amended her complaint to allege that she and her predecessors in title had been in possession of the property in question for more than fifteen years, under known and visible boundaries, and had made such use of the property as was consistent with ownership and adverse to ownership or possession by any other party. Defendants filed answer, denying all allegations of the amendment.

At the close of plaintiff's evidence, the court allowed defendants' motion for involuntary nonsuit. Plaintiff excepted and appealed to this court.

*Bryant, Lipton, Bryant & Battle by Victor S. Bryant for plaintiff appellant.*

*Powe, Porter & Alphin by E. K. Powe and Willis P. Whichard for defendant appellees.*

BRITT, J.

The crucial question presented by this appeal is whether the evidence offered by plaintiff, when considered in the light most favorable to her, was sufficient to make out a *prima facie* case and

thus withstand defendants' motion for compulsory nonsuit. We think that it was.

The parties stipulated the following: All lands owned and claimed by both plaintiff and defendants in this action were owned by one Hawkins Chisenhall by virtue of a commissioner's report and final decree in a partition proceeding entered in September 1887. The 2.82 acres of land in controversy is designated as tract A on a plat prepared by one Love, R.L.S. Defendant corporation has record title to tracts A, B and C, and plaintiff has record title to tract H, as shown on said plat, through mesne conveyances from Hawkins Chisenhall. Charles W. White, Commissioner, executed and delivered to Dr. J. Y. Hinson a deed for tracts A and H, said deed bearing date of 5 December 1952 and recorded on 8 December 1952. Plaintiff is the sister and devisee of Dr. Hinson and succeeded to his interests in tracts A and H by virtue of his will probated 4 April 1963. Plaintiff claims ownership of tract A under color of title by adverse possession.

The plat aforesaid indicates that the lands claimed by plaintiff, a total of approximately 77.75 acres, are pear-shaped, tract A being triangular-shaped and fitting into the southwestern portion of tract H. The plat indicates that defendants' tracts B and C, containing approximately 25 acres, lie south of plaintiff's land and are somewhat rectangular in shape with tract A being an appendage extending off from the northeastern portion.

Charles W. White, as a witness for plaintiff, testified that after being appointed commissioner to sell the lands later conveyed by him to Dr. Hinson, he employed one Hunter Jones, a surveyor, to survey and plat the property purportedly owned by the decedent, David Chisenhall, whose land was being sold to make assets; that Surveyor Jones provided him with plats of the property and that a metes and bounds description made from the plat was used in the notice of sale and in the deed to Dr. Hinson; that the 2.82 acres in question were included in the plat and in the descriptions.

Plaintiff claims title under G.S. 1-38 which requires possession by the plaintiff and her predecessors, under known and visible lines and boundaries and under color of title, for seven years. We will discuss the three requirements in reverse order.

[1, 2]    The deed from Charles W. White, Commissioner, to Dr. Hinson, dated 5 December 1952, recorded 8 December 1952, and with description embracing tracts A and H, clearly constituted color of title. *Perry v. Bassenger*, 219 N.C. 838, 15 S.E. 2d 365. The fact

that an instrument passes title to a part of the land embraced in its description does not prevent it from being color of title to that part to which it does not convey good title but which is embraced within its description. *Trust Co. v. Miller*, 243 N.C. 1, 89 S.E. 2d 765. It is not necessary to rely upon the proviso to G.S. 1-38, enacted in 1963, providing that commissioners' deeds in judicial sales constitute color of title.

[3]   Plaintiff's evidence was sufficient to meet the test as to "known and visible boundaries." Prior to the commissioner's sale in 1952, lines were surveyed and marked and corners indicated according to established practice, and the commissioner's deed contained a metes and bounds description conforming thereto. Witnesses testified that they were able to "walk the lines" of the lands claimed by plaintiff from the markings as late as 1963, and a registered surveyor testified he had no difficulty in 1968 finding the lines and corners in the disputed area made by Surveyor Jones in 1952.

[4]   Finally, we come to the requirement of possession for seven years, which possession must be adverse. It is obvious that a question of lappage is involved and in *Vance v. Guy*, 224 N.C. 607, 31 S.E. 2d 766, in an opinion by Stacy, C.J., we find that the following pertinent rules relating to lappage have been established by the decisions:

1.   Where the title deeds of two rival claimants to land lap upon each other, and neither is in the actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in the one who has the better title. *Penny v. Battle*, 191 N.C. 220, 131 S.E. 627.

2.   If one be seated on the lappage and the other not, the possession of the whole interference is in the former. *Shelly v. Grainger*, 204 N.C. 488, 168 S.E. 736; *Currie v. Gilchrist*, 147 N.C. 648, 61 S.E. 581.

3.   If both have actual possession of some part of the lappage, the possession of the true owner, by virtue of his superior title, extends to all not actually occupied by the other. *McLean v. Smith*, 106 N.C. 172, 11 S.E. 184; *Asbury v. Fair*, 111 N.C. 251, 16 S.E. 467.

We agree with plaintiff's contention that rule 2 applies to the instant case. In *Currie v. Gilchrist, supra*, it is said: "* * * [I]f the party claiming under the senior title is not in possession of any part of the lappage and his adversary has been in actual possession of a part under a deed which defines his boundaries and is color of

title, the law extends his possession to the whole of the lappage, and if he retains the possession for the time required by the statute, seven years, and it is adverse, it will bar the right of entry of the other party and defeat his recovery." That this is settled law is shown by *Lane v. Lane*, 255 N.C. 444, 121 S.E. 2d 893; *Trust Co. v. Miller, supra; Whiteheart v. Grubbs*, 232 N.C. 236, 60 S.E. 2d 101; *Vance v. Guy, supra;* and *Berry v. Coppersmith*, 212 N.C. 50, 193 S.E. 3. See also 1 Strong, N.C. Index 2d, Adverse Possession, § 18, p. 70.

[5, 6] "Adverse possession means actual possession, with an intent to hold solely for the possessor to the exclusion of others and is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible, such acts to be so repeated as to show that they are done in the character of owner, and not merely as an occasional trespasser. (Numerous citations)." Denny, J. (later C.J.), in *Lindsay v. Carswell*, 240 N.C. 45, 81 S.E. 2d 168. Proof of intermittent acts of trespass is not sufficient to overrule a motion to nonsuit upon the issue of adverse possession, *Lindsay v. Carswell, supra,* but evidence of continuous possession by using the land for the purposes for which it was ordinarily susceptible, even though such acts were seasonal or intermittent, is sufficient. 1 Strong, N. C. Index 2d, Adverse Possession, § 25, p. 76, citing *Everett v. Sanderson*, 238 N.C. 564, 78 S.E. 2d 408, and other cases.

[7] It is well-established law in this jurisdiction that on a motion to nonsuit, plaintiff's evidence is to be taken as true and must be considered in the light most favorable to her, giving her the benefit of every fact and inference of fact pertaining to the issues, which may be reasonably deduced from the evidence. 7 Strong, N. C. Index 2d, Trial, § 21, pp. 294, 295.

[3] The testimony of Robert Dunn tended to show that very soon after Dr. Hinson purchased the land in December 1952 he employed Dunn to "bush and bog" or plow up a considerable portion of the land, including the portion where three fish ponds were later built. Other testimony established that the dam of the southernmost fish pond was partially on the 2.82 acres in question. Dunn testified that he broke up some of the land south of the lower fish pond and that Dr. Hinson planted pulpwood trees on that land.

Plaintiff's son, Walter G. Price, testified in substance as follows: In 1957 he lived in Georgia and visited Dr. Hinson, his uncle, on the farm in November of that year. The center fish pond (located immediately north of the southernmost pond referred to above) had

just been completed. He walked around the boundaries of the farm with Dr. Hinson, beginning at a gum tree at the southern end of the property and moving clockwise. He found it easy to follow the lines and the corners and to proceed from each corner marker to the other. He described the 2.82 acres in question as being very rolling, with small streams on it, and in 1957 it was used for growing timber; that timber was all the land was capable of growing because it was rolling and parts of it subject to overflow. He returned to the farm in the Summer of 1963 and again "walked the lines." The southernmost pond had been built and stocked with fish between 1957 and 1963. The disputed land below the southernmost fish pond contained pine and hardwood trees similar to that in 1957. His brother who lived on the farm had caused a forester to mark some of the trees with paint about waist high and at the base, preparatory to selling the trees. The farm road, partly on the disputed area, was used by plaintiff and others in connection with the farm. Some of the trees on the disputed area were sold by his brother between 1963 and 1965. The defendant corporation first claimed title to the disputed area in March or April of 1968.

Plaintiff testified that during recent years she had received approximately $300.00 each year as fees from people fishing in the ponds and that most of the fishing was done in the southernmost pond. She submitted other testimony to show indicia of possession of the 2.82 acres by her and Dr. Hinson.

Defendant corporation took title to its lands by two deeds dated 13 March 1968 and recorded on 19 April 1968. It is noteworthy that each deed contained a metes and bounds description of the entire lands claimed by defendants, but immediately after the description contained the following proviso: "No warranty of title is made as to that portion of the above-described tract which is claimed by J. Y. Hinson at Deed Book 208 at page 507, Durham County Registry. Reference is hereby made to Plat Book 24 at page 49 for a more particular description of the area not warranted."

Plaintiff's evidence was sufficient to make out a *prima facie* case, and the judgment of involuntary nonsuit entered by the superior court is

Reversed.

BROCK and PARKER, JJ., concur.