BESSIE PRICE (WIDOW) v. TOMRICH CORPORATION AND WILLIAMS E. ARANT, JR., TRUSTEE FOR FIRST UNION BANK

No. 33

(Filed 18 June 1969)

1. **Adverse Possession § 17— color of title**
   Color of title is a written instrument which purports to convey the land described therein but fails to do so because of a want of title in the grantor or some defect in the mode of conveyance.

2. **Adverse Possession § 17— color of title — description in deed**
   When the description in a deed embraces not only land owned by the grantor but also contiguous land which he does not own, the instrument conveys the property to which grantor had title and constitutes color of title to that portion which he does not own.

3. **Adverse Possession § 17— color of title — valid deed**
   A valid deed — a muniment of title — may serve as color of title.

4. **Adverse Possession § 17— color of title — commissioner's deed**
   Commissioner's deed, which was executed and delivered to plaintiff's predecessor in title in a special proceeding brought by an administrator C.T.A. to make assets to pay debts, constitutes color of title to all the land described therein.

5. **Adverse Possession § 6— tacking possession — beneficiary under a will**
   Plaintiff, who succeeded to her title as beneficiary under a will, is entitled to tack her adverse possession of lappage to such possession by the testator as she is able to establish.

**6. Adverse Possession § 18—** color of title — presumptive possession to outermost boundaries of deed

When one enters upon a tract of land and asserts his ownership of the whole under color of title, the law will extend his occupation of a portion thereof to the outer bounds of his deed, provided no part of the premises is held adversely by another; and his exclusive and uninterrupted possession for seven years will ripen title to all the land embraced within the deed.

**7. Adverse Possession § 4—** lappage in description of deeds

Where the title deeds of two rival claimants to land lap upon each other, and neither is in the actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in the one who has the better title.

**8. Adverse Possession § 4—** lappage in description of deeds

If one of two rival claimants to land is seated on the lappage and the other not, the possession of the whole interference is in the former.

**9. Adverse Possession § 4—** lappage in description of deeds

If both rival claimants have actual possession of some part of the lappage, the possession of the true owner, by virtue of his superior title, extends to all not actually occupied by the other.

**10. Adverse Possession § 4—** lappage in description of. deeds — possession under junior grant — presumption

To mature a title under a junior grant when a portion of the boundary of the junior grant laps on a superior title, there must be shown adverse and exclusive possession of the lappage or the law will presume possession to· be in the true owner as to all that portion of the lappage not actually occupied by the junior claimant.

**11. Adverse Possession § 1—** possession — telephone right-of-way

Where telephone company acquired from defendant's predecessors in title a right-of-way across a tract of land for its lines and an underground cable, its possession of the right-of-way did not inure to the benefit of defendant for purpose of showing possession of the tract by defendant.

**12. Adverse Possession § 4—** adverse possession of lappage — boundaries of lappage — proof

When a junior grant incorporates a portion of a senior grant, it is not necessary for the junior grantee claiming title by seven years adverse possession under color to show that the boundaries of the lappage were visible on the ground, although the claimant must establish the required adverse possession within those lines.

**13. Trial § 21—** motion to nonsuit — consideration of evidence

In passing upon a motion for nonsuit, the evidence and every legitimate inference from it must be considered in the light most favorable to plaintiff.

**.14. Adverse Possession § 25—** color of title — sufficiency of proof

In proving title by continuous, open and adverse possession of land under color of title for seven years, nothing must be left to conjecture.

**15. Adverse Possession § 1—    what constitutes adverse possession**

Adverse possession consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be repeated as to show they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser; it must be as decided and notorious as the nature of the land will permit, affording unequivocal indication to all persons that he is exercising thereon the dominion of owner.

**16. Adverse Possession § 25—    lappage — color of title — continuous possession — sufficiency of evidence**

In an action in trespass to try title wherein plaintiff and defendant dispute a lappage of 2.82 acres and defendant has the superior record title to the lappage but is not in possession of it, plaintiff's evidence *is held* insufficient to show continuous possession of the lappage by her and her predecessor in title for more than seven years under color of title.

**17. Adverse Possession § 1—    permission to hunt**

Permission to hunt, like the payment of taxes, is evidence of an adverse claim, but it is not possession.

**18. Adverse Possession § 25—    nature of the adverse possession**

Adverse possession is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible, such acts to be so repeated as to show that they are done in the character of owner, and not merely as an occasional trespasser.

**19. Adverse Possession § 1—    cutting timber or pulpwood**

When cutting timber or pulpwood is relied upon to show adverse possession it must be kept up with such frequency and regularity as to give notice to the public that the party cutting it or having it cut is claiming the land as his own.

PARKER, C.J., did not participate in the decision of this case.

ON certiorari to review decision of the Court of Appeals reported in 3 N.C. App. 402, 165 S.E. 2d 22.

This action of trespass to try title and to recover damages was instituted 25 May 1968. Plaintiff appealed to the Court of Appeals from the judgment of nonsuit entered by Godwin, J., at the July 1968 Session of Durham. The Court of Appeals reversed. This Court allowed defendant Tomrich Corporation's petition for certiorari.

*Bryant, Lipton, Bryant & Battle for plaintiff appellee.*

*Powe, Porter and Alphin by Willis P. Whichard for defendant appellant.*

SHARP, J.

The question presented is the sufficiency of plaintiff's evidence to withstand defendant's motion for nonsuit. The following facts are established by the pleadings and stipulations or are not controverted:

Plaintiff and defendant Corporation (defendant) own adjoining land in the Bragtown area of Durham County. They dispute a lappage of 2.82 acres. In September 1887 all the property now owned or claimed by the parties was owned by Hawkins Chisenhall. The division of this property is shown on a map, made 22 July 1968 by George C. Love, Jr., registered land surveyor (D-4). An outline of the pertinent portions of this map is reproduced herein. The disputed area, triangular in shape, is designated as Tract A on D-4. A map, made by J. W. Copley on 11 June 1968 (P-I), shows Tract A only. An outline of it is likewise reproduced.

Defendant, with an unbroken chain of title from Hawkins Chisenhall, has the superior record title to Tract A. Defendant also has record title to Tract B, 20.7 acres adjoining Tract A on the south, and to Tract C, a smaller area adjoining Tract B on the east. Defendant acquired record title to these three tracts on 13 March 1968 by two deeds, which described the property as one tract and referred to a map made December 1937. Each deed conveyed a one-half interest and excluded from the warranty of title the 2.82 acres "claimed by J. Y. Hinson in Deed Book 200 at page 507, Durham County Registry." Reference was also made to Plat Book 24 at page 49.

Plaintiff's claim to Tract A stems from a deed from Charles W. White, Commissioner, to her predecessor in title, Dr. J. Y. Hinson. This deed was executed and delivered to Hinson on 5 December 1952 pursuant to an order of the Clerk of the Superior Court of Durham County in a special proceeding brought by the administrator C.T.A. of David M. Chisenhall to sell decedent's land (supposed to contain about 75 acres) to make assets to pay debts. Before advertising the land for sale, the Commissioner employed a civil engineer, Hunter Jones, to locate the property, mark the lines, and provide an accurate description of it.

The map and description which Jones furnished showed a single tract of 77.75 acres. By mistake Jones included within its perimeter 2.82 acres (Tract A), which David M. Chisenhall did not own. The land was advertised and sold, and the deed to Hinson was prepared,

Price *v.* Tomrich Corp.

PLAINTIFF'S EXHIBIT I

PLAT OF DISPUTED TRACT "A"
Prepared by J. W. Copley, 11 June 1968

DEFENDANT'S EXHIBIT 4

PLAT OF PROPERTY OF PLAINTIFF AND DEFENDANT
Prepared by George C. Love, Jr., 22 July 1968

in accordance with the Jones map, which was recorded in Plat Book 24 at page 49, Durham County Registry.

As already noted, in both plaintiff's and defendant's deeds, the disputed 2.82 acres is not described as a separate lot but is included within the boundaries of the single tract described in each. On the map of the property described in defendant's deed, Tract A is shown as a projection which is the northeastern portion of defendant's land. Tract A is a triangle wedged into the southwestern portion of the 77.75-acre tract. One side of the triangle is a part of the outside boundaries of the larger tract. Thus, two sides of the lappage are defined by defendant's deed. The 77.75-acre tract embraces lots A, J, L, M, and H, as shown by D-4. Defendant stipulated that, by mesne conveyances from Hawkins Chisenhall, plaintiff has record title to Tract H, which adjoins Tract A on the north. Although there was no stipulation with reference to Tracts J, L, and M, the transcript discloses that defendant does not dispute plaintiff's title to these lots, and plaintiff does not challenge defendant's title to Tracts B and C.

Plaintiff first learned that defendant claimed Tract A in March or April 1968. In May 1968 defendant began leveling the property described in its deed, and plaintiff fenced the line between Tracts A and B. Defendant tore down the fence and continued its operations until restrained by Hall, J., upon the institution of this action.

Plaintiff is the sister of Dr. J. Y. Hinson, who died 29 March 1963. As the sole beneficiary under his will, which was probated 4 April 1963, she acquired his interest in the property conveyed to him by White, Commissioner.

[1-3]     Plaintiff claims ownership of Tract A by adverse possession for more than seven years under color of title. G.S. 1-38. Color of title is generally defined as a written instrument which purports to convey the land described therein but fails to do so because of a want of title in the grantor or some defect in the mode of conveyance. *Justice v. Mitchell,* 238 N.C. 364, 78 S.E. 2d 122; *Trust Co. v. Parker,* 235 N.C. 326, 69 S.E. 2d 841; 1 Strong, N. C. Index, Adverse Possession § 15 (1957). When the description in a deed embraces not only land owned by the grantor but also contiguous land which he does not own, the instrument conveys the property to which grantor had title and constitutes color of title to that portion which he does not own. *Lane v. Lane,* 255 N.C. 444, 121 S.E. 2d 893; *Trust Co. v. Miller,* 243 N.C. 1, 89 S.E. 2d 765. However, should the grantee in such a deed be required to establish his ownership of that portion of the tract which it actually conveyed, he could use the deed

as color of title and avail himself of method 3 detailed in *Mobley v. Griffin*, 104 N.C. 112, 10 S.E. 142, for a valid deed — a muniment of title — may also serve as color of title. *Cothran v. Motor Lines*, 257 N.C. 782, 127 S.E. 2d 578; *Lofton v. Barber*, 226 N.C. 481, 39 S.E. 2d 263. See *Marr v. Shrader*, 142 Colo. 106, 349 P. 2d 706 (1960).

[4, 5] The deed from White, Commissioner, to Dr. J. Y. Hinson constituted color of title to all the land described therein. *Johnson v. McLamb*, 247 N.C. 534, 101 S.E. 2d 311; *Trust Co. v. Parker*, *supra*. Plaintiff, being in privity with Dr. Hinson, is entitled to tack her adverse possession of the lappage to such possession by Dr. Hinson as she is able to establish. *Trust Co. v. Miller*, *supra*; *Newkirk v. Porter*, 237 N.C. 115, 74 S.E. 2d 235; 1 Strong, N. C. Index, Adverse Possession § 6 (1957); 3 Am. Jur. 2d *Adverse Possession* § 58 (1962).

Plaintiff offered plenary evidence that Dr. Hinson entered upon, and adversely possessed for more than seven years, that portion of the land described in his deed *to which his grantor had title*. From November 1953 (at least) until his death in 1963 he lived on the farm, cultivated portions of it by tenants, raised cattle, which he pastured on the northern part of the tract, constructed three ponds, and paid taxes on all of it. When plaintiff succeeded to his title, she also farmed it through tenants. *Inter alia*, she cut the timber and pulpwood, permitted hunting on the entire farm, including Tract A, and allowed fishing in the ponds upon payment of a fee. Since September 1965, she has lived in the dwelling which Dr. Hinson had occupied.

[6-9] If defendant had the senior title to the entire tract of 77.75 acres described in Dr. Hinson's deed, plaintiff's evidence of adverse possession under color would be sufficient to transfer title to the entire acreage to her. When one enters upon a tract of land and asserts his ownership of the whole under an instrument which constitutes color of title, the law will extend his occupation of a portion thereof to the outer bounds of his deed — provided no part of the premises is held adversely by another. His exclusive possession, if continued uninterruptedly for seven years, will ripen title to all the land embraced within the deed. *Price v. Whisnant*, 232 N.C. 653, 62 S.E. 2d 56; *Vance v. Guy*, 224 N.C. 607, 31 S.E. 2d 766; *Ware v. Knight*, 199 N.C. 251, 154 S.E. 35; *Mintz v. Russ*, 161 N.C. 538, 77 S.E. 851. *Simmons v. Box Company*, 153 N.C. 257, 69 S.E. 146. Here, however, the disputed area (Tract A) is a lappage, and the following rules fix the rights of the parties:

"1. Where the title deeds of two rival claimants to land lap upon

each other, and neither is in the actual possession of any of the land covered by both deeds, the law adjudges the possession of the lappage to be in the one who has the better title. . . .

"2. If one be seated on the lappage and the other not, the possession of the whole interference is in the former. . . .

"3. If both have actual possession of some part of the lappage, the possession of the true owner, by virtue of his superior title, extends to all not actually occupied by the other. . . ." *Vance v. Guy, supra* at 611, 31 S.E. 2d at 768. *Accord, Lane v. Lane, supra; Shelly v. Grainger,* 204 N.C. 488, 168 S.E. 736; *Penny v. Battle,* 191 N.C. 220, 131 S.E. 627; *Currie v. Gilchrist,* 147 N.C. 648, 61 S.E. 581; *Boomer v. Gibbs,* 114 N.C. 76, 19 S.E. 226.

[10]    Plaintiff's case seems to have been tried in the Superior Court upon the theory that possession of any portion of the 77.75-acre tract described in Dr. Hinson's deed extended his or her possession to its outer boundaries. However, since defendant has the superior title, no possession by plaintiff or Dr. Hinson outside the lappage will extend their possession to the lappage. As Hoke, C.J., said in *Land Co. v. Potter,* 189 N.C. 56, 62, 127 S.E. 343, 346, when a portion of the boundary of a junior grant laps on a superior title "to mature a title under the junior grant, there must be shown adverse and exclusive possession of the lappage, or the law will presume possession to be in the true owner as to all that portion of the lappage not actually occupied by the junior claimant." *Accord, Boomer v. Gibbs, supra; McLean v. Smith,* 106 N.C. 172, 11 S.E. 184; *Sucro v. Worthington,* 104 F. 2d 472, 473 (4th Cir. 1939).

[11]    The transcript contains no evidence tending to show any actual possession of the lappage by defendant and its predecessors, the owners of the senior title. In January 1930, one of defendant's predecessors granted to American Telephone and Telegraph Company a one-hundred-foot right-of-way. It was constructed across Tract A as shown by P-I. The Company cleared the right-of-way and thereafter it remained a visible easement, marked by poles in the center of the clearing. In January 1942, another of defendant's predecessors confirmed the 1930 easement and granted the Telephone Company the right to use a strip one rod wide for the installation of underground cables. Although they reserved the right to fence and cultivate any part of the right-of-way not required for telephone purposes, so far as the transcript discloses, the owners of the fee never made any use of the easement. Since the Telephone Company held in its own right and for its own benefit under a grant from the owners, its possession of the right-of-way did not inure to the bene-

fit of the defendant. "[W]here the purchase is of part of a tract of land, the vendee's possession will not inure to the benefit of the vendor as to the remainder of the tract." 2 C.J.S. *Adverse Possession* § 39C. (1936). *Accord, Sucro v. Worthington, supra; Neill v. Cody,* 26 Texas 286 (1862).

**[8]**    There being no evidence of any actual possession of the disputed area by defendant's predecessors in title, if Dr. Hinson was seated on any part of it, under Rule 2 as stated in *Vance v. Guy, supra,* he had constructive possession of the whole lappage. Therefore, if he and plaintiff successively continued in exclusive, actual, continuous, adverse possession of any part of it for seven consecutive years before the suit was brought, plaintiff has title to the lappage. *Vance v. Guy, supra; Currie v. Gilchrist, supra.*

In her brief filed with the Court of Appeals plaintiff says, "The plaintiff's main burden in this case was to show she and her predecessor in title had possessed the 2.82-acre tract in question *under known and visible lines and boundaries* and under color of title for seven years." (Emphasis added.) By this requirement she imposed upon herself an impossible task, for the only visible line of the 2.82-acre tract was its southwestern boundary (the line A-B-C(1) shown on P-I). Jones marked this line as a part of the perimeter of the tract described in Hinson's deed when he made his survey in 1952. The other two lines of the lappage, C(1)-D and D-E-A, being within the perimeter, were not surveyed or marked then. So far as the evidence discloses they were never marked or visible lines.

**[12]**    When a junior grant incorporates a portion of a senior grant it is not necessary for the junior grantee claiming title by seven years adverse possession under color to show that the boundaries of the lappage were visible on the ground. *Vance v. Guy, supra* at 413, 27 S.E. 2d at 121; *Land Co. v. Potter, supra; McQueen v. Graham,* 183 N.C. 491, 111 S.E. 860; *Currie v. Gilchrist, supra* at 652, 61 S.E. at 584; *see Scott v. Elkins,* 83 N.C. 424, 427-28. The claimant, however, must establish the required adverse possession within those lines. Here the lines of the lappage must be located from the calls in defendant's deed, the only instrument which defines them. Whether these lines were marked or not, at any time Dr. Hinson crossed them to perform acts of ownership on the lappage "his liability as a trespasser to one having a better title was unquestionable." *Boomer v. Gibbs, supra* at 85, 19 S.E. at 229.

**[13, 14]**    We now cull from the transcript and consider plaintiff's evidence tending to show adverse possession of the lappage in the light of two established rules: (1) In passing upon a motion for

nonsuit, the evidence and every legitimate inference from it must be considered in the light most favorable to plaintiff. *Locklear v. Savage,* 159 N.C. 236, 74 S.E. 347. (2) "In proving title by continuous, open and adverse possession of land . . . under color of title for seven years, nothing must be left to conjecture." *Price v. Whisnant, supra* at 386-87, 72 S.E. 2d at 855; *accord, Locklear v. Savage, supra; Ruffin v. Overby,* 105 N.C. 78, 83, 11 S.E. 251, 253.

[15]    The most frequently quoted definition of adverse possession was written by Walker, J., in *Locklear v. Savage, supra at* 237, 74 S.E. at 348:

". . . It consists in actual possession, with an intent to hold solely for the possessor to the exclusion of others, and is denoted by the exercise of acts of dominion over the land, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, in opposition to right or claim of any other person, and not merely as an occasional trespasser. It must be decided and notorious as the nature of the land will permit affording unequivocal indication to all persons that he is exercising thereon the dominion of owner." *See Mallett v. Huske,* 262 N.C. 177, 181, 136 S.E. 2d 553, 556; *Cothran v. Motor Lines, supra* at 784, 127 S.E. 2d at 580.

[16]    To establish the required seven years' adverse possession of the lappage, plaintiff relies upon the construction of a portion of a dam upon it and upon evidence which (she argues) is sufficient to show that Dr. Hinson "grew timber" and pulpwood there, that he and she used and maintained a farm road "which traversed the disputed area" and that she "gave hunting permission" and cut the trees on Tract A.

[17]    Permission to hunt, like the payment of taxes, is evidence of an adverse claim, but it is not possession. *Bowers v. Mitchell,* 258 N.C. 80, 128 S.E. 2d 6. Furthermore, any acts which plaintiff performed after Dr. Hinson's death in March 1963 necessarily occurred within five years of the institution of this suit and are, therefore, insufficient to mature title unless they can be added to Dr. Hinson's adverse possession of the lappage.

[16]    All the evidence tends to show that there were no fields on Tract A and that no part of it is suitable for cultivation. The center and western portions are low and swampy, and the terrain slopes sharply from the east to the center. Only trees and underbrush grew on the lappage.

There were no buildings on the disputed land. Dr. Hinson's dwelling, barns, and packhouse were all located north of Tract A. Except for the Telephone Company's installations on the right-of-way, the only improvement or structure of any kind on the lappage was a portion of the dam of the southernmost fishpond which Dr. Hinson built. As shown by the Copley map, at one point the waterline of this pond comes to the north line of Tract A, and a section of its earthen dam extends at the fartherest point, 40 feet onto the lappage. This was the last pond which Dr. Hinson built. It covered about three acres. The evidence fails to establish the date on which this pond was built. It was not there in November 1957; it was there in the summer of 1963.

Walter G. Price, plaintiff's son and Dr. Hinson's nephew, testified that in November 1957 he walked over the farm with Dr. Hinson. At that time Dr. Hinson had just completed a fishpond of about 2 or 2½ acres 300-400 yards south of the dwelling and north of Tract A. In locating this pond Walter G. Price testified that it was now the center pond, "the first one to the south of the house." He identified it by pointing to the northernmost pond shown on the blackboard map (plaintiff's Exhibit J), which was being used to illustrate the witness' testimony. It was in this pond, located north of Tract A, that most of the fishing was done.

The photograph of Exhibit J which comes to us shows only two ponds. All the evidence, however, tends to show that Dr. Hinson constructed three — two fishponds and a minnow pond. The latter (not shown on the map) was north of his dwelling.

When the witness Price returned to the farm in the summer of 1963, after the death of Dr. Hinson, he observed that the southernmost pond had been finished and stocked with bream and bass. It is obvious that the evidence relating to this pond is not sufficient to show that the encroaching dam was constructed more than seven years prior to the institution of the action.

Walter G. Price, when asked on direct examination if there "were any farm *roads* on the farm" replied that there were; that they "led from the house down by the pond going directly by the ponds and then coming over toward this, and the road wasn't continued much further — sometime it was continued further, but mostly began cultivating along here (indicating), and usually stopped here — it was maintained over to the pond along in this area, but nobody had occasion to go over it except tractors. This was maintained for automobiles and traffic."

Plaintiff testified that during his lifetime Dr. Hinson kept up the

farm roads on the property and that after his death she looked after them. In March 1968, when Copley surveyed the property for plaintiff he found a 15-foot wide farm road north of the telephone easement. The road ran for about 150 feet within the lappage along its northeast line and continued in a southeasterly direction to an undisclosed point. (See P-I) The testimony with reference to the road on the lappage fails to disclose when it was constructed, who constructed and used it or the nature and extent of its use. Patently, more specific and definite information is required before the existence of the road will amount to evidence that plaintiff and Dr. Hinson were seated on the lappage for the necessary seven years.

Plaintiff relies heavily upon the testimony of Robert Dunn to get her to the jury. He testified that the spring after Dr. Hinson moved on the farm he "bush-n-bogged" portions of it, that is, cleared it of "scrubb stuff" so that it could be cultivated; that thereafter Dr. Hinson did cultivate it and that he built ponds "there where he cut up a whole lot of land." Clearly this testimony was not related to the disputed area. No part of Tract A was ever cultivated and the three ponds (except for that portion of the dam of the third and last pond which extended into the lappage) were not located on Tract A. Dunn must have been referring to the area north of the lappage, for he did not "cut up" Tract A.

When asked if he was familiar with the southernmost pond he said he "broke that land down in there" and that he had cut up the land south of the dam "back to that power line," but he did not remember in what year he did this. The evidence discloses that in January 1953 Dr. Hinson granted to Duke Power Company a right-of-way over the property he acquired from White, Commissioner, but it does not disclose where this power line was located. However, it was not located on Tract A. It is possible that Dunn was referring to the telephone line and not the power line, but this uncertainty, as well as the inability of the witness to fix the time, renders this evidence insignificant.

In 1957 Tract A was overgrown with pine and hardwood trees, none of which had been cut down. Walter G. Price testified that between 1957, when he went over Dr. Hinson's purchase with him, and the summer of 1963, when he cruised it for his mother, there had been no cutting at all on the property. Within two years after Dr. Hinson's death — between 1963 and 1965 — plaintiff had cut the timber and pulpwood from the farm.

The only evidence tending to show that Dr. Hinson himself ever cut any trees on the lappage came from the witness Robert Dunn.

He was asked what if anything Dr. Hinson did during his life "with reference to any pulpwood on that shaded area (Tract A) below the pond there." He replied, "He cut that off and put it in pulpwood and put them ponds in there." When Dr. Hinson did this, Dunn did not attempt to say. Since all the evidence tends to show that two of the three ponds were located entirely outside the lappage and that only a portion of the dam retaining the waters of the southernmost pond encroached upon Tract A, it is clear that Dunn was speaking of the area north of Tract A. In any event, however, in view of his failure to fix the time, Dunn's testimony is no evidence tending to show possession of the lappage by Dr. Hinson in the character of owner for seven years prior to the institution of the action.

[18]    Such possession "is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible, such acts to be so repeated as to show that they are done in the character of owner, and not merely as an occasional trespasser." *Lindsay v. Carswell*, 240 N.C. 45, 51, 81 S.E. 2d 168, 173. There must be "a continuous possession of public notoriety." "Occasional entries upon the land will not serve, for they may either be not observed, or, if observed, may not be considered as the assertion of rights." *Williams v. Wallace*, 78 N.C. 354, 356. *Accord, Price v. Whisnant*, 236 N.C. 381, 72 S.E. 2d 851, wherein cases illustrating the rule applicable to cutting trees are collected.

[19]    When cutting timber or pulpwood is relied upon to show adverse possession it must be "kept up with such frequency and regularity as to give notice to the public that the party cutting or having it cut is claiming the land as his own. . . ." *Alexander v. Cedar Works*, 177 N.C. 137, 143, 98 S.E. 312, 315; *accord, Bartlett v. Simmons*, 49 N.C. 295.

We conclude that plaintiff has failed to show that "continuity of possession for the full statutory period in plain terms, or by necessary implication." *Ruffin v. Overby, supra* at 83, 11 S.E. at 253. The judgment of the trial judge nonsuiting the case was correct, and the decision of the Court of Appeals ordering a retrial is reversed.

Reversed.

PARKER, C.J., did not participate in the decision of this case.