BILLIE J. HENSLEY AND WIFE, JOYCE HENSLEY v. CLYDE RAMSEY

No. 77

(Filed 31 August 1973)

1. **Rules of Civil Procedure § 50— motion for directed verdict — requirement of setting forth specific grounds**

Rule 50(a) requires that "[a] motion for a directed verdict shall state the specific grounds therefor," and the better practice is to set forth the specific grounds in a written motion; however, if a movant relies upon an oral statement for such specific grounds, a transcript thereof must be incorporated in the case on appeal.

Hensley v. Ramsey

2. **Rules of Civil Procedure § 50— motion for directed verdict — failure to move for judgment n.o.v. — directed verdict barred in Supreme Court**

Since defendant made no post-verdict motion for judgment notwithstanding the verdict and since the trial judge after verdict did not of his own motion consider whether a directed verdict should have been entered, the Supreme Court could not direct entry of judgment in accordance with defendant's motion for a directed verdict by reason of the express terms of G.S. 1A-1, Rule 50(b)(2).

3. **Easements § 9— title from common source — conveyance of easement — better title in defendant**

In an action to determine whether defendant trespassed upon plaintiffs' property in bulldozing a road thereon or whether he was within his rights in improving the road by virtue of an easement described in the deeds of conveyance comprising his chain of title to his property which adjoined that of plaintiffs, evidence offered by defendant was sufficient to support findings that plaintiffs and defendant obtained their lands from a common source, the source conveyed defendant's property with the easement prior to conveying plaintiffs' property, and therefore defendant, in respect of the easement, had a better title from the common source.

4. **Easements § 2— creation by deed — sufficiency of description of roadway**

No particular words are necessary to grant an easement, but the granting instrument should describe with reasonable certainty the easement created and the dominant and servient tenements; hence, the language "including a right-of-way to a road across said Duncan's lot along said Lankford's Line," in a deed from the parties' common source to a grantee in defendant's chain of title was sufficient to constitute an easement by express grant.

5. **Easements § 9— easement given by predecessor in title — land subsequently taken subject to easement**

The law contemplates that a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such an examination would disclose; consequently, when plaintiffs purchased the property described in the complaint they were charged with notice of the easement to which their property was subjected by the terms of the prior deed from the parties' common source to a grantee in defendant's chain of title.

6. **Adverse Possession § 25.1; Easements § 6— easement for roadway — termination by adverse possession — trespass — erroneous instructions**

In giving instructions on the issue of whether an easement for a roadway held by defendant was terminated by adverse possession by plaintiffs and on the issue of defendant's trespass on plaintiffs' land, the trial court erred in referring to the route of an undefined course used by the parties' common source of their respective properties prior to a conveyance of land and the easement in question to a grantee in defendant's chain of title; rather, the court should have instructed that the easement related to a strip of land described in the deed from the

common source to the grantee in defendant's chain of title over which the common source had authority to grant an easement.

**7. Adverse Possession §§ 17, 25.1—valid deed—no color of title—no termination of easement by adverse possession**

A valid deed, nothing else appearing, may serve as color of title, but when it is shown that the landowner has a good title based on a connected chain of title to a common source, such landowner will not be permitted to ignore a duly recorded easement granted by his predecessors in title by the fiction of treating his valid deed merely as color of title and thereby defeat an outstanding valid easement by adverse possession for a period of seven years; therefore, the trial court erred in giving an instruction which treated plaintiffs' deed to the land in question solely as color of title where the deed did in fact pass title to plaintiffs.

**8. Easements § 6—easement for roadway—immaterial evidence improperly admitted**

When an easement is created by deed, the existence or nonexistence of other access to the highway does not affect the easement; therefore, in an action to determine the parties' rights with respect to a strip of land over which defendant claimed an easement had been expressly granted his predecessors in title, the trial court erred in allowing evidence of defendant's access to the highway through contiguous land owned by him.

APPEAL by defendant from *Winner, J.*, 14 August 1972 Session of BUNCOMBE County District Court, transferred for initial appellate review by the Supreme Court by order dated 26 March 1973 entered pursuant to G.S. 7A-31(b) (4).

This action was commenced on 21 June 1971.

Plaintiffs alleged they were owners and in possession of a certain parcel of land in Flat Creek Township, Buncombe County, North Carolina, which had been conveyed to them by Frank Chambers (unmarried) by deed dated 17 March 1960, recorded in Book 827, Page 277, in the Office of the Register of Deeds of Buncombe County, North Carolina; and that on 8 May 1971 defendant removed plaintiffs' fence, entered upon plaintiffs' property with a bulldozer and excavated a portion of plaintiffs' yard for use as a road or driveway, thereby trespassing upon and materially impairing the value of plaintiffs' property. Plaintiffs prayed that defendant be enjoined from further trespass upon their property and that plaintiffs recover actual and punitive damages and costs.

Answering, defendant admitted that on 8 May 1971, plaintiffs occupied a residence on the property described in the complaint; otherwise, defendant denied plaintiffs' allegations.

As a further defense, defendant asserted that what he had done was "by authority of and in the exercise of defendant's rights in the easement and right-of-way described in the deeds of conveyance comprising defendant's chain of title in his property, which adjoins plaintiffs' property and derives from common source and by prior right. . . ." Defendant's allegations contain references to the recorded deeds constituting his chain of title.

In accordance with the requests of plaintiffs and of defendant, there was a jury trial, at which both plaintiffs and defendant offered evidence.

As evidence of ownership, plaintiffs offered as Exhibit P-1 the recorded deed dated 17 March 1960 from Frank Chambers (unmarried) to plaintiffs, which purports to convey in fee simple, free and clear of encumbrances, the parcel of land in Flat Creek Township described therein and in the complaint as follows:

"BEGINNING on a stake made from an old automobile axle, said stake being in Pierce Hensley's southeast corner, and being also in the north margin of the Flat Creek-Georgetown Road, and runs thence with said Hensley's line, North 1° West 258 feet to a stake in southeasterly margin of the old Burnsville Road; thence with said margin of said road, North 38° East 132 feet to a stake in Ramsey's line; thence leaving said Road and running with said Ramsey's line three (3) calls: South 76° 30' East 122 feet; South 43° 30' East 69.5 feet and South 47° East 81 feet to a stake in Arnold Garrison's northwest line; thence with said Garrison's line, South 33° 30' West 308 feet to a stake in the north margin of said Flat Creek-Georgetown Road; thence with said margin of said Road two (2) calls: North 84° West 46.2 feet and North 72° 15' West 91.5 feet to the BEGINNING. Containing 1.88 acres as shown by a survey made February, 1960 by J. R. Reagan, Surveyor. Being a part of the second tract described in a deed from Willie Mae Metcalf, et. al., to Frank Chambers, dated October 4, 1950, and recorded in Book 707 at Page 365 in the Buncombe County Registry."

Plaintiffs offered in evidence as Exhibit P-2 a plat based on a survey made by J. R. Reagan in 1960 prior and incident to plaintiffs' purchase of the property. This plat, together with the broken lines we have added to indicate the approximate location of defendant's parcel and of his alleged easement, is reproduced herewith.

P - 2T

PROPERTY OF.          P-2

FRANK CHAMBERS

FLAT CREEK TWP

SCALE 1" 60    J. R. REAGAN SURV

FEB    1960

No other documentary evidence was offered by plaintiffs.

The controversy involves a strip of land of undefined width within the boundaries of the 1.88 acres described in P-1 and shown on P-2. This strip extends from the northern boundary of the Flat Creek-Georgetown Road along and immediately west of the Wheeler (formerly Garrison) line 308 feet, more or less, to an adjoining parcel of land owned by defendant.

Evidence offered by plaintiffs and by defendant tends to show that, on 8 May 1971, defendant bulldozed a strip 10 to 11 feet wide at the location and for the distance indicated for use as a road providing access between his adjoining parcel of land and the Flat Creek-Georgetown Road. Prior to 8 May 1971, a controversy had arisen between plaintiffs and defendant as to whether defendant had acquired by grant and was the owner of such easement.

Defendant called as a witness Mrs. Maude Mae Duncan, widow of Harrison C. Duncan. She testified without objection that, prior to and at the time of their deed to W. E. Buckner and Dollie Buckner, referred to below, she and her husband owned a parcel of land in Flat Creek Township they had purchased from George Langford and which consisted of the 1.88 acres now owned by plaintiffs and the adjoining parcel now owned by defendant. She further testified that her husband had built a little cabin in the back, "up on the hill," for his father; that the lot on which the cabin was built was sold to the Buckners; and that the Buckners for a time lived in this cabin.

Defendant offered as his chain of title *to the easement* he asserts the following recorded deeds:

1. Deed (D-5) dated 14 July 1930 from H. C. Duncan and wife, M. M. Duncan, to W. E. Buckner and Dollie Buckner which purports to convey a parcel of land described therein as follows: "Beginning at a cherry-tree on top of a hill, in G. W. Lankford's line, runs with said Lankford's line Ninety-three feet to a stake in Loyd Sprinkle's line; thence with said Loyd Sprinkle's line Ninety feet to a black-pine, said Sprinkle's Corner; thence continuing with said Sprinkle's line Ninty [sic] feet to an iron stake, said Sprinkle's corner; thence leaving said line Eighty-nine feet to the Beginning: *including a right-of-way to a road across said Duncan's lot along said Lankford's Line,* also access to water from said Duncan's well." (Our italics.)

2. Deed (D-4) dated 13 September 1930 from W. E. Buckner and wife, Dollie Buckner, to Arry Brigman and Lillie Brigman, which purports to convey in fee simple, "with all the appurtenances thereunto belonging, or in any wise appertaining," the parcel of land in Flat Creek Township which had been conveyed to the Buckners by the Duncans by the deed dated 14 July 1930, the description in D-4 being in all respects identical with the description in D-5, including the italicized portion thereof.

3. Deed (D-3) dated 21 July 1938 from Arry Brigman and wife, Lillie Brigman, to Lloyd Sprinkle and wife, Lottie Sprinkle, which purports to convey in fee simple, "with all the appurtenances thereunto belonging, or in any wise appertaining," the parcel of land in Flat Creek Township described therein as follows:

"BEGINNING at a Cherry tree on top of a hill, in G. W. Lankford's line, runs with said Lankford's line ninety three feet to a stake in Loyd Sprinkle's line Ninety Feet to a Black Pine, said Sprinkle's corner thence continueing [sic] with said Sprinkle's line Ninety Feet to an iron stake, said Sprinkle's corner; thence leaving line Eighty Nine feet to the BEGINNING: including a right-of-way to a road across said Duncan's lot, along said Lankford's line, also access to water from said Duncan's well."

4. Deed (D-2) dated 29 March 1945 from Loyd Sprinkle and wife, Lottie Sprinkle, to Lillie Ramsey, widow, which purports to convey in fee simple three tracts or parcels of land in Flat Creek Township "with all the appurtenances thereunto belonging or in any wise appertaining." The "Third Tract" is described therein as follows:

"Beginning on a cherry tree on top of the hill, in G. W. Lankford's line, runs with said line 93 feet to a stake in Loyd Sprinkle's line; thence 90 feet to a black pine stump; thence continuing with said line 90 feet to an iron stake; thence leaving said line 89 feet to the Beginning, together with a right-of-way to a road across said Chambers's lot along Mainey's line, also access to water from said Chambers's well; being the same land conveyed to said Sprinkle by Arry Brigman and wife, by deed dated July 21, 1938, as recorded in Book No. 502 on page 517 in said office of Register of Deeds."

5. Deed (D-1) dated 7 October 1959 from Lillie Ramsey Thomas, formerly Lillie Ramsey, and husband, Zeb Thomas, to Clyde Ramsey, which purports to convey in fee simple, "with all the appurtenances thereunto belonging, or in any wise appertaining," two parcels of land in Flat Creek Township. PARCEL TWO is described therein as follows: "Being the same premises described in that certain deed from Loyd Sprinkle and wife, LOTTIE Sprinkle, to Lillie Ramsey, said deed being recorded in the Office of the Register of Deeds for Buncombe County in Deed Book 583 at Page 277, and said deed being dated March 29, 1945, to which deed reference is hereby made for a more particular description of said premises."

Defendant offered as plaintiffs' chain of title to the 1.88 acres described in the complaint the following recorded deeds and testimony:

1. Deed (D-8) dated 10 September 1932 from H. C. Duncan and wife, Maude Duncan, to W. W. Chambers, which purports to convey in fee simple, free and clear of encumbrances, a tract of land described therein as follows:

"BEGINNING at an iron stake on the North bank of Flat Creek-Georgetown Road, J. C. Myers' corner, runs with said Myers' line N 2° 30' W. 15-3/5 poles to a stake in the center of the Old Burnsville Road; thence with said road N 38° E 8 poles to a stake; thence leaving said road S. 76° 30' E. 7-2/5 poles to a pine; thence S. 43° 30' E. 4-1/5 poles to a stake; thence S. 47° E. 4-9/10 poles to a stake; thence S. 33° W 18-1/4 poles to a white oak on the aforesaid north bank of said Flat Creek-Georgetown Road; thence N 81° W. 2-4/5 poles to a stake; thence N 76° 30' W. 6 poles to the BEGINNING."

2. Deed (D-7) dated 4 October 1950 from Willie Mae Metcalf and husband, W. D. Metcalf, and Walter Chambers, unmarried, to Frank Chambers, which purports to convey in fee simple, free and clear of encumbrances, two separately described tracts or parcels of land in Flat Creek Township. The "Second Tract" is described as follows: "Beginning at an iron pin on the north bank of Flat Creek-Georgetown road, Pierce Hensley's corner, runs with said Hensley's line N. 2° 30' W. 257.4 feet to a stake in the middle of the old Bald Mountain road; thence with said road N. 38° E. 132 feet to a stake; thence leaving said road S. 76° 30' E. 122 feet to a pine; thence S. 43° 30' E. 69.3 feet to a stake; thence S. 47° E. 80.8 feet to a stake; thence S. 33°

W. 301 feet to a whit [sic] oak on the north bank of Flat Creek-Georgetown road aforesaid; thence N. 81° W. 44.8 feet; thence N. 76°. 30′ W. 99 feet to the Beginning: containing 1.74 acres more or less. For source of title see Book No. 271 page 120; Book No. 372 page 147; Book 451 page 146 in the office of Register of Deeds for Buncombe County, North Carolina."

3. Deed (D-6) dated 17 March 1960 from Frank Chambers, unmarried, to Billie J. Hensley and wife, Joyce Hensley, being the deed previously offered by plaintiffs as P-1.

The deed (D-5) dated 14 July 1930 from the Duncans to the Buckners, to which defendant traces his title to the easement, was filed for registration 15 September 1930, and registered in Book 418, Page 461. The deed (D-8) dated 10 September 1932 from the Duncans to W. W. Chambers was registered 23 December 1932, in Book 451, Page 146.

Mrs. Duncan's testimony, offered by defendant, is to the effect that W. W. Chambers, the grantee in D-8, died, survived by his children, Willie Mae, Walter and Frank. The testimony of Herman Gentry, a witness for plaintiff, is to the same effect.

We note that the east line of plaintiffs' property, referred to in their deed (P-1, D-6) from Frank Chambers as the Garrison line, is referred to by the names of the successive owners of the property lying east of and adjoining plaintiffs' property, to wit, (1) Langford (Lankford), (2) Mainey, (3) Garrison, and (4) Wheeler.

We further note that the Flat Creek-Georgetown Road is referred to as the Salem Church Road.

In reviewing the testimony offered by plaintiffs, the one word "Hensley" will refer to plaintiff Billie J. Hensley. The evidence offered by plaintiffs, summarized except when quoted, is set forth below.

From 1949 until 1960 plaintiffs rented the property now owned by them and resided in a house near the line of the property of Hensley's father which adjoined and was west of the property purchased by plaintiffs from Chambers in 1960. There was a bank three or four feet high about the full length of the frontage on Georgetown Road.

Hensley testified in effect that the route from the Flat Creek-Georgetown Road traveled by defendant and his predeces-

sors in title followed this course: A driveway located approximately twenty-five feet over on the Garrison property provided access to the Garrison property. The route or road continued on the Garrison property and did not cross the Hensley (formerly Chambers) line until it reached the rear of plaintiffs' property. Hensley testified: "I'd say a third of the route was on my property on the back of the line." He further testified that this entrance to the Garrison property had been used by plaintiffs as a means of access to their property when they were tenants of Chambers. He further testified that this driveway and route also provided access to a house north of their property then owned by Herman Gentry and that Garrison used the driveway to go in and out for the purpose of farming his property.

In 1960 plaintiffs dug a basement and put in the foundation for a new house. Hensley testified: "I was about three years or a little more building my house. I moved into it in January, 1964 . . . graded my yard and took all the bank off the front all the way down to the road."

For about three years after they bought the property, plaintiffs continued to use the entrance from the Flat Creek-Georgetown Road to and across the Garrison property as a means of access to their property. Later they built a driveway leading directly from the Flat Creek-Georgetown Road into their property. Hensley testified: "I have a rail fence along the Georgetown Road or Old Salem Church Road front of my property which I put up about a year and a half ago. My driveway intersects this rail fence about two-thirds of the way down the front line of my property from the Arnold Garrison property, being nearer my father's property on the west than it is to the Arnold Garrison property on the east. The rail fence runs from the driveway to the Arnold Garrison property line except that there is a section out of it now which was removed by Mr. Ramsey."

There was no fence or markings along the Chambers-Garrison line in 1960 when plaintiffs bought the property. Hensley testified: "Along the line between my property of 1.88 acres and the Arnold Garrison property there is a fence approximately 2/3 of the way from the front of the lot to the back of it. The rest of it is open. That is a woven fence which has been there I'd say three or four years. Before that time there was just open ground." This fence was built by Vance Boyd Wheeler on

Hensley v. Ramsey

the Hensley-Wheeler line, Wheeler having purchased the Garrison property. Hensley testified: "[T]he fence is directly on the line surveyed between our two properties."

Defendant asserted title to a right-of-way across plaintiffs' property in July of 1970, "approximately one and one half or two years after the fence was built" on the Hensley-Wheeler line. At that time defendant showed his deeds to Hensley and stated his son planned to build a house on defendant's parcel and that the exercise of his right-of-way was necessary to provide access to his property. Hensley testified that he offered to buy from defendant "what it says on this paper" but that defendant was unwilling to sell what he contended was his right-of-way. Hensley further testified: "At that time, the fence was up between me and the Garrison property and . . . the biggest majority of the roadway or ruts that I have previously described across Mr. Garrison's property, had been blocked by this fence." He further testified: "The old road was never a two-vehicle road. It was just a two rut road."

On 14 July 1970 and on 15 July 1970 defendant put sections of pipe in the ditch line, constructing a culvert directly in front of the section of the rail fence which defendant later removed. On 22 August 1970, defendant tried to bring a bulldozer onto plaintiffs' property to cut out his asserted right-of-way along the Garrison or Wheeler line. On that occasion defendant was stopped by plaintiffs.

On 8 May 1971, when plaintiffs were not at home, defendant and his sons entered upon the 1.88-acre parcel of plaintiffs, removed the section of fence where the culvert had been built and had bulldozed from the back of plaintiffs' property almost the full length of it at a width of "about 10 to 11 feet" when plaintiffs returned to their property.

The testimony of Herman Gentry, a neighbor of and witness for the plaintiffs, testified that there was a road or wagon road used to get to and from the property on which Harrison Duncan had built a little house or cabin for his father and the Salem Church Road. He further testified: "There was never no road established—just what I would call a rut wagon road or something like that through there."

Defendant offered the testimony of successive owners and occupants of the parcel of land now owned by defendant. Generally, this evidence tends to show that the route followed by

wagon or car or when walking was in the general area of the unmarked line between the Duncan and Langford properties. A review of the testimony offered by defendant in conflict with that offered by plaintiffs is unnecessary to decision on this appeal.

The issues submitted, and the jury's answers thereto, are quoted below:

"1. Was the easement held by the defendant terminated by adverse possession by the plaintiffs?

"Answer: No.

"2. Did the defendant trespass upon the property of the plaintiffs?

"Answer: Yes.

"3. What amount of damages, if any, are the plaintiffs entitled to recover of the defendant for:

(a) Compensatory Damages: $10.00.

(b) Punitive Damages: No."

The judgment entered by the court, after preliminary recitals and after quoting the issues and answers thereto, concluded as follows:

"It is now, therefore, ORDERED, ADJUDGED and DECREED that the plaintiff have and recover of the defendant the sum of Ten ($10.00) Dollars.

"It is further ORDERED, ADJUDGED and DECREED that the defendant be and he is permanently enjoined from entering upon the lands of the plaintiffs described in the complaint in this cause; provided that the defendant shall be permitted to enter upon said land of the plaintiffs at such place or places as may hereafter be determined by motion made in this cause to have been transversed by the old road leading from the Salem Church Road to the real property of the defendant described in a deed recorded in the Office of the Register of Deeds for Buncombe County in Deed Book 820 at page 360, prior to the 8th day of May, 1971.

"It is further ORDERED and ADJUDGED that the defendant pay the costs of the action to be taxed by the clerk."

The judgment was signed 16 August 1972. Defendant gave notice of appeal and in appeal entries dated 17 August 1972 excepted with particularity to each provision of the judgment.

*Lamar Gudger for defendant appellant.*

*Roberts & Cogburn by Max O. Cogburn for plaintiff appellees.*

BOBBITT, Chief Justice.

At the conclusion of plaintiffs' evidence defendant moved for a directed verdict in his favor "for lack of the plaintiffs' evidence to sustain a case against the defendant." The record indicates the court then heard argument by defendant's counsel in support of this motion but is silent as to the content of such argument. Defendant's motion was denied. At the conclusion of all the evidence the record shows simply: "Defendant renews his motion for directed verdict. Motion denied."

Nothing in the record indicates that defendant, subsequent to the return of the verdict, moved for a directed verdict or for judgment notwithstanding the verdict or made any other motion. Nor does the record indicate that the court at that time considered on its own motion whether a directed verdict should have been entered.

Defendant excepted to and assigns as error the denial of his motions for a directed verdict. Plaintiffs contend that defendant's failure to comply with the requirements of Rule 50, Rules of Civil Procedure, G.S. 1A-1, precludes consideration of these assignments on this appeal.

[1] We note first that Rule 50(a) requires that "[a] motion for a directed verdict shall state the specific grounds therefor." Cited decisions based on the identical provision in Rule 50(a) of the Federal Rules [Title 28, U.S.C.A., Federal Rules of Civil Procedure, Rules 43 to 51, pp. 375-76] support the statement that "[t]he requirement that grounds be stated on a motion for a directed verdict is mandatory." 9 Wright & Miller, Federal Practice and Procedure, § 2533, p. 579 (1971). The better practice is to set forth the specific grounds in a written motion. 9 Wright & Miller, op. cit. § 2533, p. 581. If the movant relies upon an oral statement for such specific grounds, a transcript thereof must be incorporated in the case on appeal.

Apart from the failure of the record to disclose the specific grounds urged by defendant in support of his motions for a directed verdict, whether a directed verdict should have been granted is not presented on this appeal.

Rule 50(b), which bears the caption, "Motion for judgment notwithstanding the verdict," is composed of sections (1) and (2).

Rule 50(b)(1) provides:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the submission of the action to the jury shall be deemed to be subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. In either case the motion shall be granted if it appears that the motion for directed verdict could properly have been granted. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the judge may allow the judgment to stand or may set aside the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the judge may direct the entry of judgment as if the requested verdict had been directed or may order a new trial. *Not later than ten (10) days after entry of judgment or the discharge of the jury if a verdict was not returned, the judge on his own motion may, with or without further notice and hearing, grant, deny, or redeny a motion for directed verdict made at the close of all the evidence that was denied or for any reason was not granted.*" (Our italics.)

Rule 50(b) authorizes "a 'reserved directed verdict' motion practice." Phillips Supplement (1970) to the Second Edition of McIntosh, N. C. Practice and Procedure, § 1488.35, p. 29, hereafter cited as Phillips. The reservation of final ruling on a motion for a directed verdict affords the basis for the post-verdict motion for judgment notwithstanding the verdict.

Our Rule 50(b)(2) provides:

"An appellate court, on finding that a trial judge should have granted a motion for directed verdict made at the close of all the evidence, may not direct entry of judgment in accordance with the motion unless the party who made the motion for a directed verdict also moved for judgment in accordance with Rule 50(b)(1) *or the trial judge on his own motion granted, denied or redenied the motion for a directed verdict in accordance with Rule 50(b)(1)*." (Our italics.)

Our Rule 50(b)(2) has no counterpart in Federal Rule 50(b).

In *Cone v. West Virginia Pulp and Paper Co.*, 330 U.S. 212, 91 L.Ed. 849, 67 S.Ct. 752 (1947), the Supreme Court of the United States held that, in the absence of a post-verdict motion for judgment notwithstanding the verdict in accordance with Federal Rule 50(b), the Circuit Court of Appeals had no authority to enter judgment in accordance with the defendant's motion for a directed verdict but was limited to the award of a new trial. *Accord, Globe Liquor Co. v. San Roman*, 332 U.S. 571, 92 L.Ed. 177, 68 S.Ct. 246 (1948). The reasons underlying the decisions in *Cone* and in *Globe Liquor Co.* are set forth in the opinions of Justice Black. *See also*, Comment in Phillips, op. cit., p. 33, n. 14. For criticisms of these decisions, see 5A Moore's Federal Practice, ¶ 50.12, pp. 2367-74 (2d Ed. 1971). Seemingly to free the trial judge from dependence upon the initiative of a litigant after verdict to renew his motion for a directed verdict or for judgment notwithstanding the verdict, the General Assembly amended Rule 50(b) as originally proposed, see Chapter 954, Session Laws of 1967, by substituting therefor Rule 50(b)(1) and (b)(2) as quoted above. Chapter 895, Session Laws of 1969. *See* Elster, Highlights of Legislative Changes to the New Rules of Civil Procedure, 6 Wake Forest Intra. L. Rev. 267, 278-80 (1970).

Now under the italicized portion of Rule 50(b)(1) and under the italicized portion of Rule 50(b)(2), as quoted above, the trial judge on his own motion, within the time prescribed in Rule 50(b)(1), may grant, deny, or redeny the motion for a directed verdict in accordance with Rule 50(b)(1).

We note that Rule 41 and Rule 50(b) were rewritten and enacted by Sections 10 and 11, respectively, of Chapter 895,

Session Laws of 1969. Whether the court, after the entry of judgment and within the time prescribed by Rule 50(b)(1), upon motion or on its own motion *may* set aside the verdict and judgment and order a voluntary dismissal *without prejudice* upon such terms and conditions as justice requires, is not presented on this appeal. *See* Rule 41(a)(2) ; *also, King v. Lee,* 279 N.C. 100, 181 S.E. 2d 400 (1971).

[2] Since the defendant made no post-verdict motion and since the trial judge after verdict did not of his own motion consider whether a directed verdict should have been entered, this Court "may not direct entry of judgment in accordance with the motion" by reason of the express terms of Rule 50(b)(2).

We consider now whether defendant's other assignments of error entitle him to a new trial.

[3] Evidence offered by defendant was sufficient to support findings that W. W. Chambers, from whom plaintiffs derive their title, acquired the property now owned by plaintiffs subsequent and subject to the easement which the Duncans had previously conveyed to the Buckners, as appurtenant to the property conveyed by the Duncans to the Buckners, that is, "a right-of-way to a road across said Duncan's lot along said Lankford's line."

A deed which conveys a portion of the grantor's property and in addition grants the right of ingress and egress over other lands of the grantor to a highway creates an easement in favor of and appurtenant to the land conveyed and subjects the remaining land of the grantor to the burden of such easement. *Andrews v. Lovejoy,* 247 N.C. 554, 101 S.E. 2d 395 (1958). "An appurtenant easement is one which is attached to and passes with the dominant tenement as an appurtenance thereof. . . ." *Shingleton v. State,* 260 N.C. 451, 454, 133 S.E. 2d 183, 185 (1963).

Evidence offered by defendant was sufficient to support findings that plaintiffs' ownership of the 1.88 acres was based on a connected chain of title to the Duncans. In connection therewith, we note that, upon the death of W. W. Chambers, a presumption arose that he died intestate. *Collins v. Coleman & Co.,* 262 N.C. 478, 480, 137 S.E. 2d 803, 805 (1964), and cases cited; Stansbury, North Carolina Evidence § 250 (2d Ed. 1963).

Evidence offered by defendant was sufficient to support findings that defendant's ownership of the easement over the strip in controversy is based on a connected chain of title to the Duncans and that defendant, in respect of the easement, has a better title from the common source. *Mobley v. Griffin,* 104 N.C. 112, 10 S.E. 142 (1889).

[4] Defendant relies solely upon an easement created by express grant. "No particular words are necessary to constitute a grant, and any words which clearly show the intention to give an easement, which is by law grantable, are sufficient to effect that purpose, provided the language is certain and definite in its terms. . . . The instrument should describe with reasonable certainty the easement created and the dominant and servient tenements." 28 C.J.S., Easements § 24; *Borders v. Yarbrough,* 237 N.C. 540, 542, 75 S.E. 2d 541, 543 (1953); *Oliver v. Ernul,* 277 N.C. 591, 597, 178 S.E. 2d 393, 396 (1971).

We hold the easement granted by the Duncans to the Buckners sufficient in these respects. The easement granted is a right-of-way *across* the *Duncan* lot. The Flat Creek-Georgetown Road was the only public road accessible to the Buckners by *crossing* the *Duncan* lot. The location of the right-of-way is fixed as *along the Langford (Lankford) line.* Hensley testified that defendant "was claiming 10 foot."

"Grantees take title to lands subject to duly recorded easements which have been granted by their predecessors in title." *Waldrop v. Brevard,* 233 N.C. 26, 30, 62 S.E. 2d 512, 514 (1950); *Borders v. Yarbrough, supra,* at 542, 75 S.E. 2d at 543; *Reed v. Elmore,* 246 N.C. 221, 230, 98 S.E. 2d 360, 366 (1957).

[5] "The law contemplates that a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such an examination would disclose." *Higdon v. Jaffa,* 231 N.C. 242, 248, 56 S.E. 2d 661, 665 (1949); *Hege v. Sellers,* 241 N.C. 240, 248, 84 S.E. 2d 892, 898 (1954). Consequently, when plaintiffs purchased the property described in the complaint they were charged with notice of the easement to which their property was subjected by the terms of the deed (D-5) from the Duncans to the Buckners.

Defendant excepted to the submission of each of the three issues and to instructions of the court with reference thereto.

**[6]**  The first issue, "Was the easement held by the defendant terminated by adverse possession by the plaintiffs?", was answered "No." The wording of the issue implies that plaintiffs conceded that defendant had an easement but contended it had been terminated by plaintiffs' adverse possession.

An easement by grant as set forth in his chain of title is the only easement claimed by defendant. This involves only a strip of land of undefined width within the boundaries of the 1.88 acres described in P-1 and shown on P-2 extending from the northern boundary of the Flat Creek-Georgetown Road along and immediately west of the Wheeler (formerly Garrison) line 308 feet, more or less, to the adjoining parcel of land owned by defendant.

Since the plaintiffs did not concede defendant owned the easement claimed by defendant, the only explanation of the wording of the first issue is that indicated by the following excerpt from the charge: "[T]here's been some evidence which tends to show . . . that a road was built to the property owned by Clyde Ramsey . . . before Duncan ever deeded it out and before the easement was granted. Now, if you should find that to be the fact, members of the jury, then I instruct you that the easement that was granted to Buckner and later on down the line got into the defendant Ramsey, was to that road that existed at that time and that road only." Defendant's exception to this instruction was well taken. To what extent the route used by the Duncans prior to their deed to the Buckners crossed the remaining Duncan lands or the land of George Langford, Mrs. Duncan's uncle, is immaterial. The Duncans could not grant an easement over any land except that which they then owned.

In connection with the first issue, the court also stated: "[T]he court instructs you . . . that the defendant did come into some easement by these deeds." The impression prevails that the thrust of the court's instructions with reference to adverse possession was directed solely to such portion of the plaintiffs' land as was included within the route used by the Duncans prior to their deed to the Buckners. [Note: The injunction portion of the judgment is in accord with that view.]

The second issue, "Did the defendant trespass upon the property of the plaintiffs?", was answered "Yes." In connection therewith the court instructed the jury: "[I]f you should find that the road was there before the easement was granted by

the Duncans and . . .. that this easement referred specifically to that road, that the holder of the easement has no right to move that road to some place else on the property without the permission of the person owning the property." This instruction involves the same error, namely, that the easement granted by the Duncans to the Buckners related to an undefined course partly through Duncan lands and partly through Langford lands to the Flat Creek-Georgetown Road rather than to the strip of land described in the Duncan-Buckner deed over which the Duncans had authority to grant an easement.

Nothing in the evidence suggests that the use of any route or wagon road in whole or in part on the Langford (now Wheeler) land was other than permissive.

[7]   The court instructed the jury it would be their duty to answer the first issue, "Yes," if satisfied from the evidence and by its greater weight "that the plaintiff possessed his land under known boundaries *and with color of title,* in actual, open, hostile, exclusive and continuous possession, that such possession was hostile to the use by the defendant of his easement for a continuous period of at least *seven* years. . . ." (Our italics.) Thus, the court treated plaintiffs' recorded deed dated 17 March 1960 from Frank Chambers (unmarried) solely as color of title.

Assuming, but not conceding, that plaintiffs had adverse possession of the controverted strip *for seven years,* such possession would be insufficient to "terminate" defendant's easement. There was evidence to support findings that plaintiffs owned the 1.88 acres by a connected chain of title to the Duncans. If this evidence was accepted, their deed from Frank Chambers constituted a link in a valid chain of title to the 1.88 acres.

"Color of title is generally defined as a written instrument which purports to convey the land described therein but fails to do so because of a want of title in the grantor or some defect in the mode of conveyance." *Price v. Tomrich Corp.,* 275 N.C. 385, 391, 167 S.E. 2d 766, 770 (1969). "Color of title is that which gives the semblance or appearance of title, but is not title in fact—that which, on its face, professes to pass title, but fails to do so because of a want of title in the person from whom it comes or the employment of an ineffective means of conveyance. It is a title in appearance only. If an instrument actually passes the title, it is clear that it is not 'color of title.' The term

implies that a valid title has not passed." 3 Am. Jur. 2d, Adverse Possession § 105, p. 188. *Accord, Justice v. Mitchell,* 238 N.C. 364, 366, 78 S.E. 2d 122, 124-125 (1953), and cases cited.

A valid deed, nothing else appearing, may serve as color of title. *Price v. Tomrich, supra,* at 392, 167 S.E. 2d at 770. However, when it is shown that the landowner has a good title based on a connected chain of title to a common source, such landowner will not be permitted to ignore a duly recorded easement granted by his predecessors in title by the fiction of treating his valid deed merely as color of title and thereby defeat an outstanding valid easement by adverse possession for a period of *seven* years.

The last quoted portion of the charge is erroneous and defendant's exceptive assignment of error thereto is well taken.

[8]  On cross-examination of defendant, plaintiffs' counsel was permitted over defendant's objection to elicit testimony from defendant tending to show that defendant had acquired land contiguous to the parcel conveyed by the Duncans to the Buckners and from this after-acquired land had access to the Flat Creek-Georgetown Road. The admission of this testimony was erroneous. When an easement is created by a deed, the existence or nonexistence of other access to the highway does not affect the easement. *Andrews v. Lovejoy, supra,* at 557, 101 S.E. 2d at 398.

It is unnecessary to discuss any of defendant's remaining assignments of error. For the errors indicated, the defendant is awarded a new trial.

New trial.