RAINTREE HOMEOWNERS ASSN. v. BLEIMANN

[116 N.C. App. 561 (1994)]

RAINTREE HOMEOWNERS ASSOCIATION, INC., Plaintiff-Appellant v. KARL R. BLEIMANN and wife, RENA BLEIMANN, Defendants-Appellees

No. 9326SC1169

(Filed 18 October 1994)

1. **Deeds § 87 (NCI4th)— compliance with subdivision covenants and restrictions—unreasonableness and bad faith of architectural review committee—sufficiency of evidence**

In an action by plaintiff homeowners' association to require defendant homeowners to remove vinyl siding and restore their home to its original condition, the evidence was sufficient to submit to the jury the issue of unreasonableness and bad faith on the part of plaintiff's architectural review committee where it tended to show that the vinyl siding did not change the physical appearance of the house and thus was harmonious with the existing standards of the neighborhood, and it tended to show that the architectural review committee had made up its mind about vinyl siding before it considered defendants' application and thus was not, as it contended, open-minded about defendants' application.

**Am Jur 2d, Covenants, Conditions, and Restrictions §§ 281-287.**

**Covenant in deed restricting material to be used in building construction. 41 ALR3d 1290.**

**2. Evidence and Witnesses § 1942 (NCI4th)— letters stating legal position—irrelevancy**

The trial court properly excluded letters to defendant homeowners indicating plaintiff homeowners association's legal position in an action to enjoin defendants from replacing wood clapboard siding on their home with vinyl siding since the letters had no tendency to prove any issue in the case.

**Am Jur 2d, Evidence §§ 1276-1278.**

**3. Evidence and Witnesses § 1934 (NCI4th)— memorandum of meeting—reasons for decision—exclusion not prejudicial**

A memorandum of a meeting in which members of the architectural review committee of plaintiff homeowners association explained their reasons for disapproving defendant homeowners' application for permission to replace wood siding on their home with vinyl siding was relevant to the issue of whether the committee acted reasonably and in good faith, but the trial court's exclusion of this evidence was not prejudicial error where several of the reasons set forth in the memorandum were testified to at trial and plaintiff could have established the other reasons through the testimony of committee members.

**Am Jur 2d, Evidence §§ 1254 et seq.**

**4. Evidence and Witnesses § 1652 (NCI4th)— before and after photographs—admissibility for illustrative purposes**

Before and after photographs of defendants' home were properly admitted to illustrate testimony that defendants' replacement of wood clapboard siding on their home with vinyl siding did not change the appearance of their home.

**Am Jur 2d, Evidence §§ 965-967.**

**5. Deeds § 95 (NCI4th)— compliance with subdivision conditions and restrictions—requested jury instruction not given—no error**

In an action by plaintiff homeowners' association to require defendant homeowners to remove vinyl siding and restore their home to its original condition, the trial court did not err in refusing to give plaintiff's requested instruction with regard to the validity of conditions and restrictions in the subdivision covenant and with regard to the jury's not substituting their opinion about

vinyl siding for the opinion of the architectural review committee, since the instruction given by the court fully and fairly presented the issues in controversy.

**Am Jur 2d, Trial §§ 1092 et seq.**

Appeal by plaintiff from judgment entered 11 March 1993 by Judge James W. Webb in Mecklenburg County Superior Court. Heard in the Court of Appeals 31 August 1994.

Defendants Karl R. Bleimann and Rena Bleimann own a home within a planned unit development known as Raintree. The property is subject to recorded covenants. Plaintiff Raintree Homeowners Association, Inc. (RHOA) owns property within Raintree and has the authority and duty to enforce, through its Architectural Review Committee (ARC), the terms of those covenants.

On or about 23 March 1990, defendants began to replace wood clapboard siding on their home with vinyl siding. Soon after, on 26 March, the Chairman of the ARC advised defendants to stop installation because it had to be approved by the ARC pursuant to the Declaration of Covenants, Conditions and Restrictions. Those covenants require prior written approval by the ARC of the location, plans and specifications of alterations to any building within Raintree and, in order "to provide architectural value to the subdivision," require that before any structural changes are made a "site plan, final plans and specifications" be submitted to and approved in writing by the Committee "as to harmony of exterior design and general quality with the existing standards of the neighborhood and as to location in relation to surrounding structures and topography."

Defendants applied for approval from the ARC on the day they were notified that they needed such approval. Defendants attended an ARC meeting on the evening of 26 March and presented evidence in support of their application. The ARC denied the application. Defendants requested another hearing before the ARC. The ARC discussed the application again at their meeting on 23 April 1990 and unanimously reaffirmed their prior decision. Defendants attended the ARC meeting on 21 May 1990 and again presented evidence in support of their application and suggested a compromise by which their home would be deemed a "test case" for vinyl siding. The ARC denied the application again.

Defendants had continued installation of vinyl siding. After the ARC's final determination to deny the application, plaintiff sued defendants, seeking to enjoin them from placing the vinyl siding on their house and seeking to require them to permanently remove the vinyl siding and restore the house to its original condition. Defendants answered, asserting certain defenses and praying that, among other things, plaintiff's prayers for relief be denied and that defendants be permitted to finish installing the vinyl siding.

At trial, plaintiff moved for summary judgment, which was denied. The case was tried before a jury. The issue before the jury was whether plaintiff, through its ARC, acted reasonably and in good faith when it denied defendants' application for approval of installation of vinyl siding on defendants' home.

After the close of the evidence, plaintiff moved for a directed verdict, which was denied. The jury found that plaintiff had not acted reasonably and in good faith when it denied the application. Thereafter, plaintiff moved for a judgment notwithstanding the verdict or for a new trial, which motions were denied. Based on the jury's verdict, the trial court entered an order on 11 March 1993 (1) denying plaintiff's requests for injunctive relief and for an order directing defendants to remove the vinyl siding and restore the home to its original condition, and (2) enjoining plaintiff from preventing defendants from completing the installation of vinyl siding on their home.

*Weaver, Bennett & Bland, P.A., by Michael David Bland and John R. Lynch, Jr., for plaintiff-appellant.*

*Donald S. Gillespie, Jr., for defendants-appellees.*

THOMPSON, Judge.

In this appeal, plaintiff contends the trial court erred by (1) denying its motion for summary judgment, (2) denying its motions for directed verdict and judgment notwithstanding the verdict, (3) excluding certain exhibits of the plaintiff and admitting certain exhibits of defendants, and (4) failing to instruct the jury according to plaintiff's request. For the reasons discussed below, we affirm.

I.

SUMMARY JUDGMENT

Plaintiff first assigns as error the trial court's denial of its motion for summary judgment. The denial of a motion for summary judgment

is not reviewable during appeal from a final judgment rendered in a trial on the merits. *Harris v. Walden,* 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Since there was a trial and final judgment in this case, this issue is not before us.

## II.

### DIRECTED VERDICT AND
### JUDGMENT NOTWITHSTANDING THE VERDICT

. The purpose of a motion for directed verdict, made pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(a), is to test the legal sufficiency of the evidence to take the case to the jury and to support a verdict for the nonmoving party. *Eatman v. Bunn,* 72 N.C. App. 504, 505, 325 S.E.2d 50, 51 (1985). In determining whether the evidence is sufficient to withstand a motion for directed verdict, the nonmovant's evidence must be taken as true and all the evidence must be viewed in the light most favorable to him, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, with conflicts, contradictions and inconsistencies being resolved in the nonmovant's favor. *Hornby v. Pennsylvania Nat'l Mut. Casualty Ins. Co.,* 62 N.C. App. 419, 421-22, 303 S.E.2d 332, 334, *cert. denied,* 309 N.C. 461, 307 S.E.2d 364, 365 (1983). If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict should be denied. *Broyhill v. Coppage,* 79 N.C. App. 221, 226, 339 S.E.2d 32, 36 (1986). The same test is to be applied on a motion under N.C. Gen. Stat. § 1A-1, Rule 50(b)(1) for judgment notwithstanding the verdict as is applied on a motion under N.C. Gen. Stat. § 1A-1, Rule 50(a) for a directed verdict. *DeHart v. R/S Financial Corp.,* 78 N.C. App. 93, 99, 337 S.E.2d 94, 98 (1985), *cert. denied,* 316 N.C. 376, 342 S.E.2d 893 (1986).

[1] We review the evidence in light of the above standard and find there was sufficient evidence to submit the issue of unreasonableness and bad faith to the jury. Defendants' evidence tended to prove that the vinyl siding did not change the physical appearance of the house and thus was harmonious with the existing standards of the neighborhood. It also tended to show that the ARC had made up its mind about vinyl siding before it considered defendants' application and thus was not, as it contended, open-minded about defendants' application.

To show that it acted reasonably in denying defendants' application, plaintiff presented evidence that vinyl siding had never been

used in North Raintree, the section of Raintree in which defendants' home is located, and that before defendants' application on 26 March 1990, seven residents had applied for and were denied approval of vinyl siding.

Plaintiff introduced documentary evidence of the reasons given for the denial of prior applications and the reasons given for denying defendants' application. Plaintiff's Exhibit 26B consists of the minutes of the 26 July 1983 ARC meeting which state that Mr. Clayton Ellison's proposal to re-side his house with vinyl siding was denied and that the ARC "suggested he look into getting siding of natural material that would fit in with other houses in the neighborhood" and that "[t]he committee knows of no houses within our jurisdiction that presently have vinyl siding." Plaintiff's Exhibit 26C is a letter from the ARC to Mr. and Mrs. Paul Hilgeford, which informs them that their proposal to re-side their entire home with vinyl was disapproved. The letter states:

"The concept of Raintree is one of natural wood tones in absence of brick and a preponderance of natural or stained cedar siding and trim. It is felt that the siding presented does not meet these criteria. Other colors and textures of vinyl may well meet the criteria and should be sought out and resubmitted if found. The [ARC] is most concerned that the re-sided home blend in with the surrounding homes and maintain the natural look."

Exhibit 26G includes a letter dated 18 December 1989 from the ARC to Dr. & Mrs. A. D. Colombo informing them that the ARC was rejecting their plans to re-side in vinyl because, among other reasons, "vinyl siding for a complete change has never been approved." Plaintiff's Exhibit 7 is a letter dated 6 April 1990 from the ARC to the defendants, which informs defendants that their application for approval is being denied. The letter states that the ARC performed an in-depth study of vinyl siding the previous October when another resident applied to re-side with vinyl. It further states that the ARC inspected the vinyl siding already on defendants' house after defendants' presentation to the ARC and "noted that the work continued without approval" and concludes that "[b]ased upon its studies, the committee feels strongly that vinyl siding is not conducive to the architectural integrity of North Raintree."

Ms. Betsy Smith, an ARC member at the time defendants' application was denied, testified as to the reasons for denying the application. Ms. Smith indicated that vinyl siding was unacceptable because

the colors "even including Mr. and Mrs. Bleimann's house . . . don't look like wood." Ms. Smith also testified that the ARC looked at the siding and determined that it made it "look very much colonial or traditional, in a contemporary area." Ms. Smith further testified that the ARC studied vinyl siding and subsequently decided that it was "inappropriate for this end of Raintree."

On cross-examination of Ms. Davis, defendants' attorney pointed out the inconsistency between the ARC's reasons for denying the application evidenced by Exhibit 26C, and the reasons stated for denying the applications evidenced by Exhibits 26E and 26F in order to rebut plaintiff's contention that it acted reasonably and in good faith. Exhibit 26E embodies the ARC minutes of 24 March 1986, which states that J. Patel presented his proposal to install vinyl siding and that "Tom [Gahegan] explained to him that we cannot accept vinyl siding regardless of its quality and appearance." Exhibit 26F embodies the ARC minutes of 30 May 1985, which states that the ARC denied Cricket Lake Homeowners Association's proposal to use vinyl siding on all of the units there and notes that "[i]t was the feeling of Tom, Jack and Claire that they would not approve the use of any vinyl siding regardless of the quality." This evidence tended to show that the ARC did not, as it contended, have an open mind towards vinyl siding and suggests that the purported reasons for denying defendants' application and prior applications to re-side with vinyl were not genuine.

Defendants presented five witnesses: Betsy Smith, Allen Stacey, Marion Wollman, James Auten, and Karl Bleimann. Betsy Smith testified as to the contents of defendants' Exhibits 16 and 17, which were introduced into evidence. Defendants' Exhibit 16 consists of the RHOA Board of Directors' minutes of 3 April 1990, which state that:

> Betsy Smith, Chairman of the ARC, attended the meeting to discuss the vinyl siding used by [defendants]. An application was made by Dr. and Mrs. A. D. Colombo to use vinyl siding and was denied in October. On March 25, 1990, Dr. Colombo brought to the attention of the ARC the vinyl siding currently being installed by the Bleimanns. Betsy immediately contacted the Bleimanns to inform them that they were in violation of the covenants. [Defendant] made application . . ., but the installation continued without approval. A letter will be sent from the ARC, along with the official denial form, to explain the Committee's position.

RAINTREE HOMEOWNERS ASSN. v. BLEIMANN

· [116 N.C. App. 561 (1994)]

Defendant's Exhibit 17 is a letter from the ARC to the president of RHOA which states that they researched vinyl siding in response to the Colombo's application and the ARC strongly believes it would bring down the value of houses in North Raintree. It also states that the ARC further reviewed the issue and is asking defendants to remove the siding. Exhibits 16 and 17, like plaintiff's Exhibits 26E and 26F, tend to show that the ARC had already made up its mind about vinyl siding before defendant's application and thus was not, as it contended, open-minded about defendants' application.

Allen Stacey testified that he had lived in a house diagonally across the street from defendants' house for almost five years and that since he moved into his house none of the houses had been sold. Mr. Stacey further testified that there is a house in North Raintree that appears to be a bright white color. Mr. Stacey identified pictures of the defendants' home, which were introduced into evidence and passed among the jury.

Ms. Wollman testified that she had lived in the house across the street from defendants for approximately eighteen years and that since the Staceys moved in no other houses had been sold. She also testified that there is a white house and also a greenish blue house in North Raintree. She identified pictures of defendants' home taken after the vinyl siding installation and stated that the exterior looks like wood.

James Auten, the contractor who installed siding on defendants' house, testified that he believed the siding was wood-grained and that you couldn't tell whether it was wood or siding unless you "go feel it." He further testified that, according to defendants' instructions, he painted the house to look as close as possible to the way it looked before the vinyl siding was installed.

Defendant Karl Beimann testified that in 1989 he had vinyl siding installed on a portion of the house in order to correct problems the Bleimanns were having with the paint on the house and with mildew on the north side of the house. Defendant testified that the paint was "constantly peeling and we had to re-paint the house, almost every year. And it started deteriorating with mildew; in particular, on the north-side . . . ." Mr. Bleimann described his previous unsuccessful efforts to solve these problems by painting and re-roofing. He further testified that he submitted actual samples of the vinyl siding and the rotten wood siding to the ARC at their 26 March 1990 meeting and discussed his structural problems with them at length. When asked why

he did not comply with the ARC's request to remove the siding, Mr. Bleimann responded, "Because, I felt that I had complied with everything that was in the covenant; . . . And, at the time I felt that I was doing my best effort to comply with the—let's say, surroundings of the houses to have the same board widths and have the same—I did not change the physical properties of the house; I did not change the appearance of the house or any architectural feature of the house. . . ." Mr. Bleimann also testified that there are homes in North Raintree that are painted in colors other than earth tones.

### III. ADMISSION AND EXCLUSION OF EVIDENCE

Plaintiff contends the trial court committed prejudicial error in excluding as irrelevant Exhibits 8, 13, 18 and 32. Plaintiff argues that these exhibits were relevant to show that the ARC acted reasonably and in good faith in denying defendants' application and specifically in giving notice to the defendant of the reasons for the denial.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). If proferred evidence has no tendency to prove a fact in issue in the case, the evidence is irrelevant and must be excluded. *See Hensley v. Ramsey*, 283 N.C. 714, 733, 199 S.E.2d 1, 12 (1973). A trial court's ruling on relevancy is given great deference on appeal. *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *review denied*, 331 N.C. 290, 416 S.E.2d 398 (1992), *cert. denied*, 113 S. Ct. 321 (1992).

**[2]** We find the trial court properly excluded Exhibits 8, 13, 18, and 32. Exhibits 8, 13, and 18 merely indicate plaintiff's legal position towards defendants and thus do not have a tendency to prove a fact at issue in the case. Exhibits 8, 13, and 18 were letters from the law firm representing RHOA to the Bleimanns. Exhibit 8 reiterates the RHOA's position on defendants' installation of vinyl siding and informs defendants that the RHOA is prepared to sue defendants if they do not remove the siding and replace it with an approved ARC material. Exhibit 13 is a letter regarding defendants' request to the RHOA's Board of Directors for a delay in the filing of its law suit. Exhibit 18 is a letter informing defendants that the RHOA intends to

file a lawsuit if defendants do not submit an acceptable plan for removal within ten days.

[3] Exhibit 32 is an internal memorandum of the 27 March 1990 ARC meeting in which ARC members each wrote down a few sentences explaining their reasons for disapproval. While we agree that evidence of the committee's reasons for disapproval has some bearing on whether the committee acted reasonably and in good faith and was thus relevant, we hold, pursuant to N.C. Gen. Stat. § 1A-1, Rule 61 (1990), that the exclusion of the memorandum was harmless error. "No error in . . . the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action amounts to the denial of a substantial right." N.C. Gen. Stat. § 1A-1, Rule 61 (1990). The burden is on the appellant not only to show error but also to enable the court to see that he was prejudiced and that a different result would likely have ensued had the error not occurred. *Warren v. City of Asheville*, 74 N.C. App. 402, 409, 328 S.E.2d 859, 864, *cert. denied*, 314 N.C. 336, 333 S.E.2d 496 (1985). Plaintiff has not shown that it was prejudiced by the exclusion of the memorandum and that had the memorandum been admitted, a different result would likely have ensued. In so holding, we note that several of the reasons set forth in the memorandum were testified to at trial and that plaintiff could have established the other reasons for disapproval through the testimony of ARC members.

[4] Plaintiff also argues that the trial court committed reversible error by allowing into evidence defendants' Exhibits 5-1 through 5-19, which consisted of before and after photos of defendants' home, to illustrate the testimony of Allen Stacey, Marion Wollman, and James Auten. Plaintiff objected to their admission on grounds that they were irrelevant to the issues and that they prejudiced the plaintiff by confusing the jury as to the issues in the case. Specifically, plaintiff contended that the photographs allowed the jury to substitute its own opinion for that of the ARC. The trial court allowed the photographs to be admitted and passed among the jury for illustrative purposes only. The trial court's charge to the jury included an instruction that the photographs were received into evidence for the purpose of illustrating and explaining the testimony of witnesses, not as substantive or direct evidence, and thus were only to be considered for that purpose.

Plaintiff's objection to the admission of photographs was essentially based on Rule 403. "Although relevant, evidence may be ex-

cluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (1992). Whether or not to exclude evidence under this Rule is a matter within the sound discretion of the trial judge. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). Having reviewed the testimony of Mr. Stacey, Ms. Wollman, and Mr. Auten and having observed the photographs, we find the trial court did not abuse its discretion in admitting the photographs of defendants' home for the purpose of illustrating their testimony.

## IV.

### JURY INSTRUCTIONS

**[5]** Plaintiff requested the trial court to give the following instructions to the jury:

1. Under the laws of North Carolina, the restrictions contained in the Covenants, Conditions, and Restrictions which require submission of plans and prior approval before starting construction or alteration of any structure or home is valid and enforceable, even if it allows the [ARC] broad discretionary power. Therefore, you must set aside any personal opinion that you may have concerning the restriction in this case. Whether you personally like or dislike such a restriction or believe such a restriction is proper or fair is not an issue. I am instructing you that, as a matter of law, the restriction is valid and enforceable.

2. It is not your duty to second guess or substitute your opinions concerning vinyl siding for the opinion of the [ARC]. The issue is not whether vinyl siding is good or bad or whether the [ARC] made the right or wrong decision. You are to decide only whether the manner in which the [ARC] carried out their duties was reasonable or unreasonable, and done in good faith or bad faith.

The trial court instructed the jury that the issue is, "Did the plaintiff, through its [ARC], act reasonably and in good faith when it denied defendants' application for approval of installation of vinyl siding on defendants' home?" The trial court further instructed the jury as follows:

Now, on this issue . . . the burden of proof is on the plaintiff. This means that the plaintiff must prove, that its [ARC] acted reasonably and in good faith with its denying defendants' application.

You must determine for yourself, based on the totality of the circumstances, whether or not the plaintiff's denial of defendants' application because it was not conducive to the architectural integrity of North Raintree, was based on reason, on adequate determining principles, on fairness, and not arbitrary and capricious.

The validity and enforceability of the covenants, conditions and restrictions in Raintree are not an issue in this case. They are valid and enforceable, as a matter of law.

The only limitation, under law, placed upon the plaintiff . . . through its [ARC's] discretion is that in the exercise of its authority, such must be exercised reasonably and in good faith.

. . .

Each of you was chosen and sworn as jurors to find the true facts of this case, from the evidence. You are to perform this duty fairly and objectively and without bias or prejudice for either party.

You should not be swayed by pity, sympathy, prejudice or public opinion. You must not consider the affect of the verdict on the plaintiff or the defendants or concern yourself as to whether it pleases the Court.

Plaintiff contends that the trial court committed reversible error in failing to instruct the jury according to its request. We disagree. A court's refusal to submit a requested instruction is not error where the instructions which are given fully and fairly present the issues in controversy. *Tan v. Tan*, 49 N.C. App. 516, 521, 272 S.E.2d 11, 15 (1980). Since we find that the court's instructions fully and fairly presented the issues in controversy, we find no error.

No Error.

Chief Judge ARNOLD and Judge MARTIN concur.